THE VILLAGES DEVELOPMENT COMPANY, INC. *vs.*
SECRETARY OF THE EXECUTIVE OFFICE OF
ENVIRONMENTAL AFFAIRS & another.[1]

Suffolk. January 9, 1991. - May 14, 1991.

Present: LIACOS. C.J., WILKINS, NOLAN, O'CONNOR, & GREANEY, JJ

*Environment*, Environmental impact report. *Secretary of Environmental
Affairs. Administrative Law*, Judicial review, Exhaustion of remedies.
*Jurisdiction*, Damage to the environment, Judicial review of adminis-
trative action. *Declaratory Relief. Practice, Civil*, Complaint, Declara-
tory proceeding.

The Superior Court had jurisdiction under G. L. c. 231A to entertain an
action by a real estate development corporation for judicial review of a
decision of the Secretary of the Executive Office of Environmental Af-
fairs determining the scope of the environmental impact report required
of the developer in connection with a proposed construction project.
[105-110]
Where a developer of a large, substantially completed building project was
granted an easement by the Commonwealth to permit construction of a
bridge over a certain bicycle trail, the scope of the environmental im-
pact report required of the developer pursuant to G. L. c. 30, §§ 61-
62H, the Massachusetts Environmental Policy Act, was to be limited
only to the direct and indirect effects of the building of the proposed
bridge, and could not properly extend to other components of the pro-
ject distinct from the bridge. [110-115]
The fact that the Commonwealth had already granted an easement to a
real estate developer permitting construction of a bridge did not pre-
clude the Secretary of the Executive Office of Environmental Affairs
from requiring an environmental impact report concerning the effects of
the proposed bridge, or render such a report superfluous. [115-116]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 23, 1987.

---

[1]Department of Public Works.

The case was heard by *John L. Murphy, Jr.*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*David L. Klebanoff* (*James W. Murphy* with him) for the plaintiff.

*James R. Milkey*, Assistant Attorney General, for the defendants.

GREANEY, J. In this appeal, we are asked to determine whether the plaintiff, The Villages Development Company, Inc. (Villages), may challenge, in the Superior Court, a decision made by the defendant, the Secretary of the Executive Office of Environmental Affairs (Secretary), acting pursuant to the Massachusetts Environmental Policy Act (MEPA), G. L. c. 30, §§ 61-62H (1988 ed.), regarding the scope of an environmental impact report (EIR) that the Secretary required of Villages in connection with a project it is developing in Brewster. A judge of the Superior Court dismissed Villages' amended complaint, concluding that the Superior Court lacked subject matter jurisdiction to decide Villages' challenge to the Secretary's action. Villages appealed, and we transferred the appeal to this court on our own motion. We now reverse the judgment of dismissal.

The material facts in the case are undisputed. Those facts, and other pertinent background on the case, can be summarized as follows. Villages is a private corporation which owns a large tract of land in Brewster. Since 1984, Villages has developed its land into a successful planned unit development and multi-use community known as The Villages at Ocean Edge. At the time of the lawsuit, the project was ninety per cent complete, with 941 of a proposed 1,066 condominium units built over a 379-acre land area. The project also involves recreational facilities, including a public golf course, clubhouse, and tennis courts. The closest major road is Route 6A, and access between the project and Route 6A is currently provided by Thad Ellis Road, a public way in Brewster. This road crosses a widely used bicycle path at grade. Due to dangers resulting from a heavy volume of traffic on

the road, Villages and town officials agreed to create a new access road between Route 6A and the project. The controversy underlying this case stems from the new access road.

Because the access road would open onto Route 6A, a State highway, Villages is required to obtain a curb-cut permit from the Department of Public Works (DPW).

Under MEPA, when a private developer applies for a permit from an agency, such as the curb-cut permit sought by Villages, the developer must first file an environmental notification form (ENF) with the Secretary, informing him of the nature of the project. G. L. c. 30, § 62A. The Secretary reviews the ENF and consults with all interested parties to determine whether a comprehensive EIR is required.

> "If a report is required, the secretary with the cooperation of [the private developer] and [the] agency shall . . . limit the scope of the report to those issues which by the nature and location of the project are likely to cause damage to the environment. The secretary shall determine the form, content, level of detail and alternatives required for the report." G. L. c. 30, § 62A.[2] See 301 Code Mass. Regs. § 11.06 (1987).

The scope of the EIR must be limited to the part of the project that is within the "subject matter jurisdiction" of the permit. *Id.* G. L. c. 30, § 62A. Once a final EIR has been approved, and at least sixty days have passed from the date the final EIR was available, the agency may act on the permit application. G. L. c. 30, § 62C. The EIR provides the agency with the information necessary to ensure that "all feasible measures have been taken to avoid or minimize" im-

---

[2]"An environmental impact report shall contain statements describing the nature and extent of the proposed project and its environmental impact; all measures being utilized to minimize environmental damage; any adverse short-term and long-term environmental consequences which cannot be avoided should the project be undertaken; and reasonable alternatives to the proposed project and their environmental consequences." G. L. c. 30, § 62B.

pact on the environment, as required by MEPA. G. L. c. 30, § 61.

Pursuant to these requirements, in August, 1985, Villages filed an ENF with the Secretary. The Secretary determined that no EIR was required for the DPW curb-cut permit sought by Villages, as long as use of the proposed road was limited to access to and from a sales office and, possibly, a small commercial development in the project. The Secretary notified Villages, however, that expanded use of the access road would require another ENF and further environmental review. DPW issued a limited use curb-cut permit, indicating that the new road could not be used for access to the entire project until all the requirements imposed by the Secretary had been met.

Town officials requested that Villages, in building the new access road, construct a bridge over the bicycle path that runs parallel to Route 6A between the project and that highway. The bicycle path is owned by the Department of Environmental Management (DEM), which is overseen by the Secretary. In order to construct the bridge, it was necessary for Villages to acquire an easement, including "air rights," from DEM, over the bicycle path and across its adjoining sides. In connection with the limited use curb-cut, the Secretary had asserted that Villages' acquisition of an easement from DEM would confer upon him jurisdiction to review all the environmental impacts of the entire Ocean Edge project. In April, 1986, Villages paid DEM $4,125 for the air rights and easement. See St. 1985, c. 327 (the emergency law authorizing conveyance of the easement). The access road and bridge were constructed privately by Villages without any financial assistance from the State.

In November, 1986, Villages sought further permission from the DPW to expand its use of the new road to provide access to the entire project, and not merely to its sales office. Following the Secretary's instructions, Villages submitted an ENF for the entire project. On January 23, 1987, after a comment period, the Secretary issued a written decision requiring Villages to prepare an EIR for the entire project, to

include within its scope issues of traffic, wetlands, drainage, and subsurface waste disposal impacts. In justifying the extent of his "scoping decision," the Secretary stated that "the DEM land transfer confers MEPA jurisdiction over all aspects of the project." Villages was prevented from obtaining an expanded use curb-cut permit from DPW until it complied with the Secretary's decision.

Villages commenced this action in the Superior Court on March 23, 1987.[3] Its amended complaint sought: (1) a declaration that a regulation relied upon by the Secretary to assert MEPA jurisdiction over the entire project was facially invalid;[4] (2) a declaration that the scope of the EIR required under MEPA by the Secretary was too wide-ranging (viz., related to more aspects of Villages' project than were the subject of the curb-cut permit); and (3) an injunction permitting use of the road for full access to the project. Based on the pleadings, uncontroverted exhibits, and the administrative record, Villages moved for summary judgment pursuant to Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974), which was opposed by the Secretary. The summary judgment motion was heard by a judge of the Superior Court, who did not deal with its merits. Rather, relying on *Cummings v. Secretary of Envtl. Affairs*, 402 Mass. 611 (1988), the judge concluded, sua sponte, that the Secretary's decision was unreviewable, and, therefore, the Superior Court lacked subject matter jurisdiction over the case. Villages' motion for recon-

---

[3]After it filed suit, Villages submitted a draft EIR to the Secretary covering the issues specified in the Secretary's scoping decision. The Secretary determined that the draft was inadequate in the depth of analysis and methodologies that it employed and directed the preparation of a more comprehensive EIR.

[4]The regulation referred to in the Secretary's decision had, by the time of commencement of the lawsuit, been recodified in substantially the same language in 301 Code Mass. Regs. § 11.27 (5) (a) (6) (1987), as follows:

"(5) *Acquisition or Disposition of Interests in Real Property.*

(a) The following require an ENF: . . .

6. Any disposition by MDC, DEM, or DFW of a new or enlarged easement over MDC, DEM or DFW park, forest, watershed, or conservation land."

sideration was denied, and the judgment of dismissal now under review was entered.

1. *Jurisdiction.* Whether the Superior Court had subject matter jurisdiction to hear Villages' dispute with the Secretary presents a question of law for this court to decide. *Cummings, supra* at 614. In its amended complaint, Villages relied on the provisions of MEPA, G. L. c. 30A, § 7, and G. L. c. 231A to challenge the Secretary's action. Fairly read, the amended complaint asserted that: .

> (a) MEPA granted the Secretary jurisdiction over a project only when a State agency either financially assisted or sponsored the project;
> (b) if the only contact between an owner and a State agency involved the issuance of a permit, then the Secretary's jurisdiction was expressly limited to that part of the project that fell within the subject matter jurisdiction of the permit;
> (c) the DEM easement did not involve State financial assistance or sponsorship of Villages' project, and the easement was not a permit, therefore the Secretary had no basis to claim jurisdiction over the entire project for the purpose of requiring a comprehensive EIR;
> (d) if the easement was found to be a permit, its grant by DEM did not confer on the Secretary MEPA jurisdiction over the entire project; and
> (e) the regulation relied upon by the Secretary to justify his scoping decision was facially invalid, and, if valid, could not properly have been relied upon by the Secretary to confer broad scope jurisdiction.

As has been stated, the amended complaint went on to request declaratory and injunctive relief either to set aside or limit the Secretary's decision and to allow Villages full use of its access road.

We are satisfied, in the circumstances of this case, that the Superior Court had subject matter jurisdiction under G. L. c. 231A to decide all issues raised by Villages' complaint.

Section 2 of G. L. c. 231A provides that declaratory relief can be obtained "to secure determinations of right, duty, status or other legal relations under . . . a . . . statute . . . or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination." It is settled that such relief is available to challenge the legality of administrative action even though the action concerns neither adjudication nor rule making. See *Westland Hous. Corp.* v. *Commissioner of Ins.*, 352 Mass. 374, 383 (1967); *South Shore Nat'l Bank* v. *Board of Bank Incorporation*, 351 Mass. 363, 366 (1966); *Woods* v. *Newton*, 349 Mass. 373, 376-377 (1965). See also A. Cella, Administrative Law and Practice § 1851 (1986); Lareau, Administrative Law: The Use of the Declaratory Judgment to Secure Judicial Review of Administrative Action, 1967 Ann. Surv. of Mass. L. 175, 176. To secure declaratory relief in a case involving administrative action, a plaintiff must show that (1) there is an actual controversy; (2) he has standing; (3) necessary parties have been joined; and (4) available administrative remedies have been exhausted.

There is no doubt that an actual controversy exists in this case and that Villages has standing. A property owner is involved in an actual controversy within the meaning of G. L. c. 231A, § 1, when, as is the case here, the use of his property is prevented or impaired by an administrative decision which the owner maintains is invalid. See *Stop & Shop Cos.* v. *Board of Registration in Pharmacy*, 394 Mass. 1008 (1985); *Woods* v. *Newton*, *supra* at 376. Further, the Secretary's decision directly affected the rights of Villages to expand access to its project. Villages could incur legally cognizable injury, by way of delay and considerable extra expense, if the Secretary was wrong and his decision went unredressed. A plaintiff, in these circumstances, has standing to seek declaratory relief. See *Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292-296 (1977). As to the third requirement enu-

410 Mass. 100 107

Villages Development Co. *v.* Secretary of the Executive Office of Environmental Affairs.

merated above, there is no contention that any other necessary parties have not been joined.

The Secretary argues that Villages has not exhausted its administrative remedies because the MEPA review process has not been completed. We do not agree. The Secretary has suggested no other administrative remedy through which Villages can avoid the apparently large expenditure of time and money that it will face if it is required to comply with the decision. The Secretary's decision with respect to the scope of the EIR required of Villages is essentially final. In this respect, the case is fundamentally different from *Walpole* v. *Secretary of the Executive Office of Envtl. Affairs*, 405 Mass. 67 (1989), on which the Secretary relies. In that case, the town of Walpole challenged, under G. L. c. 231A, a determination by the Secretary that certain interim reports prepared by the Massachusetts Water Resources Authority (MWRA) complied with MEPA. MWRA had proposed a sludge management project, and the interim reports set the scope of the EIR that MWRA would prepare in connection with the project. The reports identified several potential sites for the project. Three of the potential sites were in Walpole. We held that the town had not exhausted its administrative remedies because it had not yet been determined, at the time of the lawsuit, whether the project would even be located in Walpole. Thus, we concluded that the Secretary had not taken final action. *Id.* at 71-72. We suggested that the Secretary's certification of the final EIR for the project would constitute final action, *id.* at 72, but found no administrative finality where the town was not immediately affected by the Secretary's decision, and it was unclear whether the town would be affected at all. This case does not involve a speculative decision. Rather, it involves a concrete and specific administrative determination which allows an owner no reasonable alternative to compliance. Villages has fulfilled all of the requirements for bringing a declaratory judgment action challenging the Secretary's decision.

We reject the Secretary's remaining arguments on the jurisdiction question.

(a) There is nothing in *Cummings* v. *Secretary of Envtl. Affairs*, 402 Mass. 611 (1988), which precludes resort to G. L. c. 231A by a property owner in Villages' position. *Cummings* involved a ten-citizen suit under G. L. c. 214, § 7A, challenging a determination by the Secretary that no EIR was necessary for a mixed use commercial development. We held that G. L. c. 214, § 7A, did not confer jurisdiction on the Superior Court for a suit challenging the Secretary's discretionary decision *not* to require an EIR, and that no specific jurisdiction for that type of challenge was contained in the provisions of MEPA. As the *Cummings* opinion makes clear, its holding is specifically limited to the construction and application of G. L. c. 214, § 7A, and to the facts involved in the case. See *id.* at 614. It does not, as the Secretary suggests, establish a broad class of MEPA decisions which are committed to the Secretary's discretion and unreviewable in court. The *Cummings* decision did not address, or purport to address, the issue of Superior Court jurisdiction to hear a statutory challenge to a decision by the Secretary requiring an EIR, when the challenge is brought by a plaintiff whose property rights are adversely affected by the decision.

(b) The Secretary also contends that Villages' complaint did not sufficiently set forth the jurisdictional basis for its action, and, therefore, that Villages had waived the opportunity to make its jurisdictional arguments. No such waiver took place. The Massachusetts Rules of Civil Procedure do not require that a complaint set forth its jurisdictional basis, and Villages' failure clearly to do so is, at worst, only a minimal defect. See Mass. R. Civ. P. 8 (a), 365 Mass. 749 (1974); *Attorney Gen.* v. *Sheriff of Worcester County*, 382 Mass. 57, 59-60 (1980); *Twomey* v. *Board of Appeals of Medford*, 7 Mass. App. Ct. 770, 772-773 (1979). Villages would have been required to assert a correct jurisdictional basis for its action if the Secretary had filed a motion to dismiss for lack of jurisdiction. See *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 3, (1979). However, despite the Secretary's assertion that *Cummings*, which was decided

410 Mass. 100                                                    109

Villages Development Co. *v.* Secretary of the Executive Office of Environmental Affairs.

shortly after Villages' complaint was filed, cast doubt on the Superior Court's jurisdiction to hear this challenge, the Secretary never filed such a motion to dismiss. As we have indicated, the amended complaint was sufficient to indicate that Villages was properly invoking G. L. c. 231A as a basis of jurisdiction.[5]

(c) The Secretary's assertion that a declaratory judgment action can only be brought if there is another statute that establishes jurisdiction is not accurate. It is true that courts may only grant declaratory relief "within their respective jurisdictions." G. L. c. 231A, § 1. However, this limitation principally refers to organic statutes which define the jurisdiction of the respective courts, see *Konstantopoulos* v. *Whately*, 384 Mass. 123, 127-128 (1981),[6] and to statutes

---

[5]The Secretary points out that declaratory relief under G. L. c. 231A was also sought in the original complaint in *Cummings*, and he has included a copy of the complaint in the record. See *Flynn* v. *Brassard*, 1 Mass. App. Ct. 678, 681 (1974), *S.C.*, 4 Mass App. Ct. 795 (1976) (court can take a judicial notice of the original papers comprising the record in an earlier case). The Secretary asserts that, because we held that there was no jurisdiction in *Cummings*, we must have concluded that there is no jurisdiction under G. L. c. 231A. This is not true. The briefs in the *Cummings* case did not discuss G. L. c. 231A in their jurisdictional arguments, and we did not consider whether G.L. c. 231A was a basis of jurisdiction. See *Cummings*, *supra* at 613. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 719 n.12 (1990), quoting *Webster* v. *Fall*, 266 U.S. 507, 511 (1925).

The Secretary also points out that a petition for rehearing was filed after *Cummings* was decided, in which the Secretary asked us to narrow the decision so that it would explicitly leave open the possibility of challenging MEPA decisions. This is also unpersuasive. The denial of a petition for rehearing is discretionary with the court, and may be made for any number of reasons. In this case, as in most cases, no reasons were given. No legal conclusions can be drawn from the denial of the petition for rehearing in *Cummings*. See *Acme Plastering Co.* v. *Boston Hous. Auth.*, 25 Mass. App. Ct. 985, 986 (1988). Cf. *Ford* v. *Flaherty*, 364 Mass. 382, 387-388 (1973).

[6]In *Konstantopoulos*, *supra*, relied upon by the Secretary, we held that an action challenging a licensing decision should have been brought in the Superior Court rather than the Probate Court because the remedy did not involve a proceeding in equity, but was essentially an action at law by way of certiorari. *Id.* at 29. The Probate Court, a court of limited jurisdiction,

that provide for exclusive jurisdiction over certain subjects in certain courts, see *Sisters of the Holy Cross of Mass.* v. *Brookline,* 347 Mass. 486, 490-492 (1964). The limitation does not mean, as the Secretary asserts, that another statute must expressly provide jurisdiction before a declaratory judgment action may be brought. Such a reading would substantially negate the use of declaratory judgment in administrative cases.

We conclude that the Superior Court had subject matter jurisdiction under G. L. c. 231A to decide Villages' dispute with the Secretary as to the lawfulness of his decision under MEPA and related administrative regulations.[7]

2. *The Secretary's decision.* We have before us the material evidence (which is documentary) and the administrative record. We are, therefore, in a position to decide the merits of the case and now proceed to do so.

Because Villages' project is private, MEPA requirements apply only if financial assistance is being provided by the

---

had no authority to hear such an action. We concluded that G. L. c. 231A, while it confers upon courts the power to render declaratory judgments "within their respective jurisdictions," may not authorize courts to grant relief which they have no jurisdiction to grant. *Id.* at 127-128. The decision does not, however, support the Secretary's assertion that G. L. c. 231A cannot itself provide a basis of jurisdiction when the appropriate bases for such an action exist and the court is otherwise authorized to grant the relief sought.

[7]Insofar as the amended complaint challenged the facial validity of the regulation, jurisdiction was also conferred by G. L. c. 30A, § 7, a statute which was specifically referred to by Villages in its amended complaint. See *Rate Setting Comm'n* v. *Division of Hearings Officers,* 401 Mass. 542, 544-545 (1988); *Massachusetts State Pharmaceutical Ass'n* v. *Rate Setting Comm'n,* 387 Mass. 122, 126 (1982). The issue of the validity of the regulation for practical purposes will be decided in the context of the declaratory judgment request.

It is also worth noting that the second paragraph of § 62H of c. 30 sets out time limitations for commencement of actions "alleging an improper determination *that* a project requires the preparation of an environmental impact report." (emphasis added). See 301 Code Mass. Regs. § 11.20(2) (1987). This language suggests that the Legislature contemplated an action such as the present one. While the language itself does not provide subject matter jurisdiction under MEPA, it does support the application of G. L. c. 231A, to allow the Superior Court to resolve the dispute.

State, or if a permit from a State agency is needed for the project. G. L. c. 30, §§ 62, 62A. The project receives no State financial assistance; therefore, the Secretary argues that the easement acquired by Villages from DEM (which clearly is an agency under MEPA, see G. L. c. 30, § 62), constituted a "permit" within the statutory definition of that term. We agree with the Secretary that the easement is a "permit" under the statute. MEPA defines "permit" as an "action, including the issuance of a lease . . . or other entitlement for use, granted to any person, firm or corporation." G. L. c. 30, § 62. The grant of the easement was an "entitlement for use" under the statute.[8] Further, it is consistent with the general regulatory scheme to hold that State transfers of interests in land, as well as State grants of permits, licenses, and certificates, constitute sufficient State involvement in a private project to justify the assertion of jurisdiction by the Secretary under MEPA.

MEPA also provides that, when a private project is subject to review thereunder because of its need for a permit from a State agency, the scope of environmental review in the EIR is limited to "that part of the project which is within the subject matter jurisdiction of the permit." G. L. c. 30, § 62A (1988 ed.).[9] See also *Boston Preservation Alliance, Inc.* v.

---

[8]This conclusion is strengthened by the administrative regulations, which add to the statutory definition of "permit" the word "deed." 301 Code Mass. Regs. § 11.02 (1987). This regulation does not conflict with G. L. c. 30, § 62. In our view, the term "permit" in the statute was intended to include transfers of land and interests in land, such as easements, and it was reasonable for the agency to identify with greater specificity by means of regulation the types of transfers that would trigger environmental oversight.

[9]General Laws c. 30, § 62A, provides, in part: "A person applying or intending to apply to an agency for a permit or for financial assistance for a project may, at any time prior to, but, in any event, shall no later than ten days after filing the first application for such permit or assistance notify the secretary of environmental affairs of the nature of the project and of such application, if any, on such forms as said secretary shall prescribe and shall transmit copies of said notification forms to such agency from which a permit or financial assistance is or may be sought. Any agency proposing a project may file said notification forms prior to the development of the project and shall file said forms no later than the secretary of

*Secretary of Envtl. Affairs,* 396 Mass. 489, 494 (1986); Kaledin, The Massachusetts Environmental Policy Act and Private Development Activity: Is the Law Working?, 32 B.B.J. 23 (No. 1 1988). This restriction is known as the "subject matter jurisdiction" limitation.

We agree with the Secretary's assertion that the "subject matter" of a permit means the scope of what an agency is empowered to consider when making its decision to grant the permit. For example, when DPW grants a permit, it must consider the traffic-related environmental impacts that will result from that decision. See *Boston Preservation Alliance, Inc., supra* at 493-494. We also agree with the Secretary that, as a general proposition, when the "permit" is a transfer of land or an interest in land by an agency, the agency's decision may not be tied to any particular impact of the transfer. Thus, the agency could be required to consider all environmental impacts of that part of the project which is related to the transfer of land or land interest, and the required EIR would be obliged to examine all such impacts. Compare *id.* at 495-496.

We do not agree, however, with the Secretary's broad assertion of jurisdiction under this principle in this case. Specifically, we do not agree that the transfer of a land interest relating to one discrete and physically separate component of

environmental affairs shall by regulation prescribe. Within thirty days after issuance of notice of the receipt of such notification, the secretary shall consult with the person or agency proposing the project and the agency, if any, from which a permit or financial assistance is or may be sought and shall issue a certificate stating whether an environmental impact report is required. If a report is required, the secretary with the cooperation of said person and agency shall, within the above mentioned thirty day period, limit the scope of the report to those issues which by the nature and location of the project are likely to cause damage to the environment. The secretary shall determine the form, content, level of detail and alternatives required for the report. *In the case of a permit application to an agency from a private person for a project for which financial assistance is not sought the scope of said report and alternatives considered therein shall be limited to that part of the project which is within the subject matter jurisdiction of the permit.* Any finding required by section sixty-one shall be limited to those matters which are within the scope of the environmental impact report, if any, required by this section." (Emphasis added.)

a much larger project will necessarily confer jurisdiction on the Secretary over all environmental impacts of the entire project. The administrative regulations define "Subject Matter Jurisdiction" as the following:

> "the authority granted by the MEPA statute to the Secretary to review private projects which require agency permits, but no agency funding. For such projects, the scope of any EIR may include no more than all direct and indirect impacts from activity necessary to carry out that part of the project which is within the subject matter of those permits." 301 Code Mass. Regs. 11.02 (1987).

The bridge over the bicycle path in this case is the only component of Villages' project that is "within the subject matter of [the] permit[]," because the DEM easement encompasses only the land and air rights necessary to build that bridge. In our view, any environmental impacts which did not flow directly or indirectly from the building of the bridge could not properly be included within the Secretary's subject matter jurisdiction.[10] Therefore, components of Villages' project which are physically and conceptually distinct from the bridge may not be included in the required EIR.[11]

---

[10]The Secretary derives his argument for expanded jurisdiction, in part, from DEM's organic act, which provides that DEM has the duty "to exercise general care and oversight of the natural resources of the commonwealth and of its adjacent waters; to make investigations and to carry on research relative thereto; and to propose and carry out measures for the protection, conservation, control, use, increase, and development thereof." G. L. c. 21, § 1 (1988 ed.). However, in the emergency law authorizing conveyance of the easement, DEM is required only to approve the plans and specifications for construction of the bridge. St. 1985, c. 327. DEM's broad statutory mandate applies in this situation only to construction related to the easement, and does not override the subject matter jurisdiction limitation of MEPA.

[11]The Secretary cites two Federal cases construing the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4331-4332 (1988), which hold that a transfer of land from the Federal government which enables a private project to go forward is subject to NEPA, and that an Environmental Impact Statement (EIS) must be prepared to study significant im-

We recognize that, in some cases, an environmental policy, now supported by regulation, prohibits the segmentation of a project by a developer into different components in order to evade environmental review. See 301 Code Mass. Regs. § 11.16 (1987).[12] However, when the Secretary obtains jurisdiction over a project through the granting of a permit by a State agency, that policy does not apply, because, by law, the Secretary has jurisdiction only over "that part of the project" within the subject matter jurisdiction of the permit. G. L. c. 30, § 62A. The Secretary had jurisdiction in this case to require of Villages an EIR covering only the granting of the easement and its direct and indirect impacts, not the environmental impacts of Villages' entire project.[13] To the

---

pacts of the project. See *Conservation Law Found. of New England, Inc. v. General Servs. Admin.*, 707 F.2d 626, 633 (1st Cir. 1983); *National Forest Preservation Group* v. *Butz*, 485 F.2d 408, 411 (9th Cir. 1973). NEPA's jurisdictional test is much broader than that of MEPA, see 42 U.S.C. § 4332(C) (an EIS must be prepared in the case of "major Federal actions significantly affecting the quality of the human environment"), and it does not have an analogous subject matter jurisdiction limitation. Therefore, the comparison between MEPA and NEPA is of limited value. However, even accepting the validity of the comparison, the cases cited by the Secretary do not expressly hold that an EIS may be required which goes beyond the direct or indirect impacts of the sale of land, to other, physically and conceptually distinct components of a project being carried out by the private purchaser of the land.

[12]This regulation reads as follows: "In determining review threshold status and conducting project review, the entirety of a proposed project, including likely future expansions, shall be considered, and not separate phases or segments thereof. In determining whether two or more projects are in fact one project, all circumstances are to be considered, including but not limited to time interval between phases, whether the projects, taken together, constitute a common plan or scheme, and whether environmental impacts are separable. Ownership by different entities does not necessarily indicate that two projects are separate. It is the intent of this rule that projects not be segmented or phased to evade or defer review."

[13]We are not persuaded by the Secretary's argument that, because the bridge is necessary for the project to go forward, it is an integral part of the entire project and should not be segmented from the rest of the project in order to avoid review. Even assuming that the Secretary's factual premise is true, this reasoning would essentially eviscerate the subject matter jurisdiction limitation. It could plausibly be argued in any situation that a permit, including the grant of an easement, is necessary for a project to go forward, and therefore, that it should not be segmented from the

extent that the Secretary has interpreted the above regulation as conferring on him subject matter jurisdiction over the entire project, he has exceeded the statutory limitations on his authority.[14]

Finally, Villages argues that it would serve no purpose to require an EIR with respect to the easement at this point, because the easement has already been granted.[15] In general, under MEPA the filing of an EIR is intended to be a prerequisite to the granting of a permit, in order to assist the agency in making its decision to grant the permit. According to Villages, the EIR could serve no such function and should not be required at all.

Courts may order a party to comply with requirements for obtaining a permit after the permit has been granted, especially when that party was aware of the requirements, as was the case here.[16] See, e.g., *Home-Like Apartments, Inc.* v. *Architectural Access Bd.*, 27 Mass. App. Ct. 851, 857 (1989); *Cellarmaster Wines of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n.*, 27 Mass. App. Ct. 25, 29 (1989). Furthermore, an EIR could still be significant. If it shows that environmental impacts would result from the building of the bridge, DEM could ask Villages to take action concerning those impacts. If Villages refuses to take action, DEM could

---

rest of the project for the purposes of the required EIR. This argument is clearly precluded by MEPA. See G. L. c. 30, § 62A.

[14]It is not necessary to invalidate, under G. L. c. 30A, § 7, the regulation relied on by the Secretary to assert jurisdiction over the entire project. See 301 Code Mass. Regs. 11.27 (5)(a)(6). The regulation provides only that an ENF is required when DEM disposes of an easement, and says nothing about the scope of a required EIR. The regulation, therefore, is not facially invalid.

[15]Villages does not dispute that an EIR must be filed in connection with the expanded use curb cut being sought from DPW. As both sides concede, however, that EIR may only include traffic related impacts. See generally Newman, The "New" Curb-Cut Permits: Highway Access and Environmental Regulation, 35 B.B.J. 25 (No. 2 1991).

[16]In authorizing the limited use curb cut from DPW, the Secretary informed Villages that acquisition of the easement would require further environmental review.

request that a court use its equitable powers to rescind the grant of the easement.

3. *Disposition.* This dispute has been lengthy, and there is some indication that much of the controversy between the parties may have been resolved. Rather than directing the entry of a declaration of rights, we think it would be appropriate for the Superior Court to conduct a hearing to determine what remains, if anything, to be resolved. After that hearing, a judgment declaring the rights of the parties and granting such other relief as may be appropriate can be framed and entered.

The judgment of dismissal is reversed. The case is to stand for further proceedings in the Superior Court consistent with this opinion.

*So ordered.*