Cratsley, J.
Plaintiffs propose to build a pier on the north end of Clark’s Island, located in Duxbury Bay near Plymouth, Massachusetts. The secretary has required that plaintiffs prepare an Environmental Impact Report (EIR) pursuant to the Massachusetts Environmental Protection Act (MEPA), G.L.c. 30 §§61-62H, and regulations promulgated thereunder. Plaintiffs now seek, via a motion for summary judgment, a declaration that the secretary improperly determined that the pier project required an EIR or alternatively that the secretary required an EIR which was overly broad in its scope. For the reasons below, plaintiffs’ motion for summary judgment is allowed in part and denied in part.
BACKGROUND
In 1987 the Department of Environmental Management (DEM), Division of Forests and Parks, issued plaintiffs a Forestry Management Plan Certificate allowing them to conduct forestry activities on their property on Clark’s Island. MEPA Rec. at 61-67.[2] The DEM later amended this certificate to add additional acreage owned by the plaintiffs. Id. at 68-73. The plaintiffs’ certificate and the amendment state that the plaintiffs are exempt from preparing an Environmental Impact Report (EIR) concerning the forestry activities. Id. at 64, 71.
In September 1991 plaintiffs applied for a license to build a pier off their properly on Clark’s Island. They applied for both a “Chapter 91 license” pursuant to the Massachusetts Waterway Statute, G.L.c. 91, and a Wetland Protection Act (WPA) order under G.L.c. 131, §40.[3] Plaintiffs intend to use the pier for loading and unloading supplies for their forestry activities. MEPA Rec. at 96. The proposed pier is approximately 120 feet long with two 10-foot by 30-foot floats attached to it. MEPA Rec. at 218. The pier would extend across statutorily protected tidelands. Id.
In October 1992 ten citizens filed a written request with the secretary asking her to require the plaintiffs to either prepare an EIR or to file an Environmental Notification Form (“ENF”). MEPA Rec. at 20-22.[4] In December 1992 the secretary formally required the plaintiffs to submit an ENF. MEPA Rec. at 45-47. Plaintiffs submitted an ENF regarding the proposed pier in June 1993. MEPA Rec. at 96-105. The secretary collected comments on the project from various individuals and organizations including residents of Clark’s Island, environmental groups, and state and local governmental entities. MEPA Rec. at 106-70.
In August 1993 the secretary issued a certificate requiring plaintiffs to prepare an EIR. MEPA Rec. at 218-21. Plaintiffs filed this lawsuit pursuant to G.L.c. 30, §62H and 301 C.M.R. §11.20 alleging that the determination requiring the EIR was improper and that the EIR as required was overly broad.
*66 DISCUSSION
A.Summary Judgment and Standard of Review
Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories and admissions, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56; Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The existence of disputed facts is consequential to the summary judgment inquiry only if those facts have a material bearing on the disposition of the case. Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988). Substantive law identifies whether a fact is material. Kourouvacilis v. GeneralMotors Corp., 410 Mass. 706, 711 (1991).
Massachusetts courts traditionally uphold the decisions of administrative agencies unless they are arbitrary and capricious or constitute an abuse of discretion. G.L.c. 30A, §14; Forsyth School for Dental Hygienists v. Board of Registry in Dentistry, 404 Mass. 211, 217 (1989); Yearardi’s Moody Street Restaurant & Lounge, Inc. v. Board of Selectmen of Randolph, 19 Mass.App.Ct. 296, 300, rev. denied, 394 Mass. 103 (1985). In reviewing decisions of the secretary under MEPA, however, our Courts have not formally accepted this standard of review in any published decision. Secretary of Environmental Affairs v. Massachusetts Port Authority held that the trial court’s review of the secretary’s decision not to require an EIR was not limited by the “arbitrary and capricious” standard because the decision was neither adjudicatory nor regulatory. 366 Mass. 755, 771 (1975). In Massachusetts Port Authority, however, the heightened standard of review of the secretary’s finding is linked to the negative determination that no EIR was required. Id. at 772.[5] Because the instant case concerns the secretary’s positive determination that an EIR is required, the concern for public health and welfare which led the Massachusetts Port Authority Court to endorse a more stringent standard of review is not present here. This Court will therefore review the secretary’s determination, within the summary judgment context, to determine whether it is arbitrary or capricious or constitutes an abuse of discretion.
B.Requirement that an EIR be filed.
The secretary did not abuse her discretion in requiring that plaintiffs file an EIR. Plaintiffs argue that MEPA allows the secretary to review and evaluate projects “so as to minimize and prevent damage to the environment,” and that “damage to the environment shall not be construed to include any insignificant damage to or impairment of such resources.” G.L.c. 30, §61. Because the proposed pier is below the threshold regulations which would trigger automatic review, plaintiffs argue that the project does not, as a matter of law, significantly impact the environment. G.L.c. 91; c. 131, §40; 301 C.M.R. §11.25. The secretary did not abuse her discretion, however, by responding to the fail-safe request for an ENF. 301 C.M.R. §11.03(6). Moreover, the MEPA Record reflects that numerous neighbors, governmental officials, and others had concerns regarding the pier’s potential negative impact. The secretary has presented sufficient evidence to this reviewing Court to establish as a matter of law that her determination requiring an EIR was neither arbitrary or capricious, nor an abuse of discretion.
C. The scope of the EIR.
The EIR, as required by the secretary, is overly broad and therefore constitutes an abuse of discretion. The scope of an EIR is legally limited to the subject matter of the agency permits sought. G.L.c. 30, §62A; 301 C.M.R. §11.06; Vülages Development Co. v. Secretary of the Executive Office of Environmental Affairs, 410 Mass 100, 102-03 (1991). Plaintiffs argue that the scope of the EIR should be limited by the state agency permits they seek for the pier, namely the Chapter 91 license and the WPA order pursuant to G.L.c. 131, §40. The secretary argues that the EIR’s scope is justified by the subject matter of the Chapter 91 License, by the pier’s potential impact on the environment, by forestry activities associated with the pier, and by the fact that the plaintiffs’ forestry activities receive a subsidy in the form of a tax reduction.
This Court holds that the EIR should be limited by G.L.c. 91 and the WPA, G.L.c. 131, §40, the two statutes under which the plaintiffs are seeking permits. Chapter 91 protects the public interest in tidelands and waterways. 310 C.M.R. §9.01(2).[6] The WPA protects and regulates wetlands and water-related resources. 310 C.M.R. §10.01(2).[7] The plaintiffs’ applications for a Chapter 91 license and a WPA order, therefore, enable the secretary to require an EIR which will examine how the pier will affect the public interest in the tidelands across which the pier will be built, and the public interest in wetlands and water-related resources.[8]
Given the above limitations of the EIR’s scope under the applicable statutes and regulations, the EIR as required in the present record is overly broad and is therefore an abuse of the secretary’s discretion. Our Supreme Judicial Court dealt with analogous facts in Villages, supra, 410 Mass. 100. There a developer sought to build a bridge over a bike path. Id. at 103. When the developer attempted to get an easement for the bridge from the DEM the secretary issued a determination requiring an EIR with a very broad scope including the project’s impact on traffic, nearby wetlands, drainage, and waste disposal. Id. at 103-04. The Court found that, “[C]omponents of Villages’ project which are physically and conceptually distinct from the bridge may not be included in the required EIR.” Id. at 113 (emphasis in original).
In this case, the EIR required by the secretary purports to include several aspects of the plaintiffs’ *67 activities which are physically and conceptually distinct from the proposed pier. The secretary’s EIR would require an evaluation of the environmental impact of the pier and “associated current and past forestry practices on wildlife habitat, in particular, the [heron] rookery.” (Emphasis added.) In addition, the EIR would require plaintiffs to reanalyze a previous wildlife management program and evaluate the compatibility of their forestry management plan with the wildlife management plan and the proposed pier. Insofar as each of these requirements would require the plaintiffs to submit an EIR which covers both the proposed pier and the environmental impact(s) of the plaintiffs’ current and past forestry activities, the required EIR is overly broad.
The secretary has failed to show that the plaintiffs’ current and past forestry activities are directly or indirectly related to the permits which they need to accomplish their proposed pier. The plaintiffs already possess the state certificates they need to legally pursue forestry activities on their land on Clark’s Island. The plaintiffs can, and apparently do, continue these forestry activities, even without the needed permits which would allow the pier. Since the pier has not yet been built, it is impossible to see how it may affect, directly or indirectly, the plaintiffs current and past forestry activities.
Further, the secretary’s arguments for a broadly scoped EIR are unconvincing. The secretary attempts to classify the plaintiffs’ forestry certification as a continuing state subsidy which would give the Commonwealth the ability to review its environmental impacts at any time. It is true that the plaintiffs must continue their forestry activities on Clark’s Island in order to be eligible for the tax subsidy they receive for their forestry activities. G.L.c. 61, §8. It does not, however, follow that the secretary therefore has free reign to require plaintiffs to prepare an EIR at any time during the pendency of the certificate. Plaintiffs’ forestry activities were apparently below the standards which would have automatically required them to file an ENF when they applied for the certificate. The certificate and a later amendment both that the plaintiffs are exempt from preparing an EIR. To require a holder of a forestry certificate to prepare an EIR at any time, or at numerous times, during the term of their certificate simply because of the continuing nature of their tax subsidy would be unfair. Such a requirement would discourage the businesses and industry our Commonwealth needs to employ its citizens and drive its economy, and would risk eroding our environmental laws into a hodgepodge of ad hoc enforcement. For these reasons, this Court is not persuaded by the secretary’s argument that the forestry certificate should broaden the scope of her EIR.
ORDER
For the reasons discussed above, the plaintiffs’ Motion for Summary Judgment is IN PART ALLOWED and IN PART DENIED. The secretary may require plaintiffs to file an Environmental Impact Report regarding their proposed pier project, provided that it is limited to the subject matter of the plaintiffs’ applications for a Chapter 91 license pursuant to G.L.c. 91 and a WPA order pursuant to G.L.c. 131, §40.

The MEPA Record was attached to the affidavit of Mary Ann Nelson and appended to the Secretary’s Memorandum. Nelson is Deputy General Counsel of the Executive Office of Environmental Affairs and Keeper of the Records for the EOEA.

Plaintiffs also need state approval of the pier project pursuant to the federal Rivers and Harbors Act, 33 U.S.C. §403. Plaintiffs argue without dissent from the secretary that these certifications are virtually automatic under 301 C.M.R. §21.08(2) and 314 C.M.R. §9.02(2).

The proposed pier’s dimensions are below the regulatory guidelines which would automatically require the plaintiffs to file an EIR. 301 C.M.R. §11.25. Pursuant to a “fail-safe” provision in the MEPA regulations, however, the secretary may require permit applicants to submit an ENF if ten citizens of the Commonwealth request her to do so. 301 C.M.R. §11.03(6).

The Court states, “When an agency makes a decision downplaying the environmental effects of a proposed activity, the court may properly ‘cock a skeptical eye’ at the decision.” Id. (emphasis added; quoting Leventhal, Environmental Decision making and the Role of the Courts, 122 U.Pa.L.Rev. 509, 523-24 (1974)). In a footnote the Court adds, “The prevailing tendency of the federal courts is to exercise de novo review of agency negative statements.” Id. at 772 n.6 (emphasis added).

Tidelands are “submerged lands and tidal flats lying between the . . . high water mark . . . and the seaward limit of state jurisdiction.” 310 C.M.R. §9.02. Waterways are “any area of water and associated submerged land or tidal flat lying below the high mark ...” Id. The regulations require a Chapter 91 license for construction projects, 310 C.M.R. §9.05(1), and define “structure” as “any man-made object which is intended to remain in place in, on, over or under tidelands ... or other waterways. Structure shall include . .. pier . . .” 310 C.M.R. §9.02.

Wetlands and water-related resources includes water supplies, flood control, storm damage, pollution prevention, and protection of shellfish, fisheries and wildlife habitats. 310 C.M.R. §10.01(2). The WPA protects “resources areas” including ocean banks, coastal wetlands, beaches, dunes, lands subject to tides, and the like. 310 C.M.R. §10.02(1). The WPA regulates activities within resource areas, or within a 100-foot “buffer zone” around resource areas. 310 C.M.R. §10.02(2).

fyhe secretary’s determination requiring an EIR also purports to rely on plaintiffs’ applications for a Water Quality Certification and for a Coastal Zone Consistency certification for the pier project. Plaintiffs argue without dissent from the secretary, however, that these certifications are virtually automatic under 301 C.M.R. §21.08(2) and 314 C.M.R. §9.02(2). The secretary does not argue that these permits justify the broad scope of the EIR she required, and therefore apparently concedes that these two permits do not expand the scope of the EIRbeyond its permissible scope pursuant to the Chapter 91 license and the WPA order.