Haggerty, J.
INTRODUCTION
Plaintiff, the Town of Sherborn (“Sherborn”), filed suit against defendants, Robert Durand, Secretary of the Executive Office of Environmental Affairs of the Commonwealth of Massachusetts (“Secretary”), and the Town of Holliston (“Holliston”), seeking equitable relief. In Count I, Sherborn seeks a declaration, under G.L.c. 231A, that Holliston’ s Comprehensive Wastewater Management Plan does not comply with the Massachusetts Environmental Policy Act (“MIERA”), contrary to the Secretary’s Final Environmental Impact Report (“FEIR”). In Count II, Sherborn alleges that Holliston’s project damages the environment within the meaning of G.L.c. 214, §7A, and seeks an injunction restraining Holliston from proceeding until the project complies with MEPA and its regulations.
The Secretary now moves to dismiss Count I, under Mass.R.Civ.P. 12(b)(l)and 12(b)(6), on the ground that Sherborn lacks standing under the Supreme Judicial Court’s recent decision in Enos v. Secretary of Environmental Affairs, 432 Mass. 132 (2000). For reasons stated below, the Secretary’s motion to dismiss Count I is ALLOWED.
FACTUAL BACKGROUND
Sherborn and Holliston are adjoining towns in Massachusetts that share a common boundary defined by Dopping and Bogastow Brooks. Beneath a portion of that boundary exists an aquifer that is presently a major source of drinking water for Holliston. That aquifer is one of only two aquifers that can act as a potential source of drinking water for Sherborn’s residents. An unspecified number of Sherborn residents’ private wells currently draw from that aquifer.
Holliston is presently engaged in a project known as the “Comprehensive Wastewater Management Plan” involving the replacement of a private septic system with a public sewer system. As the project requires the issuance of permits and seeks the financial assistance of state agencies, it is subject to the requirements of MEPA. G.L.c. 30, §61-62H.
On or about April 15, 1998, Holliston filed an Environmental Notification Form (“ENF”) with the office of the Secretary, which thereafter established a Special Review Procedure for the project in accordance with regulations. Under this procedure, Holliston was required to submit an environmental impact report in three phases: (1) Needs Analysis and Screening of Alternatives; (2) Draft Environmental Impact Report and Facilities Plan; and (3) Final Environmental Impact Report.
After filing the ENF, Holliston determined that instead of transporting untreated wastewater to an existing treatment plant in the town of Medway as originally planned, it would construct two wastewater treatment plants in Holliston. The effluent would then be treated and discharged through the ground into four infiltration basins. One of the proposed basins, where as much as 600,000 gallons per day of treated wastewater will be discharged, is located approximately 250 feet from Dopping Brook and directly above the aquifer. According to Sherborn, the alteration in Holliston’s plan may have a negative environmental impact on both brooks, the underlying aquifer, and potentially upon Sherborn’s land and groundwater.
Under the MEPA’s regulations, Holliston was required to file a Notice of Project Change (“Notice”) that would be published in the Environmental Monitor. Subsequently, in determining whether the change in Holliston’s project required that a new ENF be filed, the Secretary would consider the public’s response to this publication. Holliston, however, did not file this Notice.
In February of 2000, Holliston submitted its Final Environmental Impact Report, (“FEIR”) which was published in the Environmental Monitor on February 23, 2000. According to Sherborn, Holliston’s FEIR failed to comply with numerous MEPA regulations.[1] Nonetheless, on March 31, 2000, the Secretary issued a certificate finding that Holliston’s FEIR “adequately and properly” complied with MEPA.
DISCUSSION
Approximately one month after Sherborn filed its complaint, the Supreme Judicial Court decided Enos v. Secretary off Environmental Affairs, 432 Mass. 132 (2000). In Enos, the court held that nearby property *216 owners seeking to challenge the issuance of a Certificate of Compliance by the Secretary of Environmental Affairs for the construction of a municipal sewage treatment plant did not have standing to maintain their declaratory judgment action under G.L.c. 231 A. The Secretary asserts that Enos should be read to entirely eliminate property owners from the class of plaintiffs who have standing to seek declaratory relief against the Secretary’s MEPA decisions. In opposition, Sherborn argues that the Secretary’s interpretation is too restrictive, and under the Court’s prior decisions, the plaintiff asserts standing to challenge the Secretary’s decision by way of declaratory relief.
In Enos, fourteen property owners from the town of Plymouth(“Plymouth”) filed a complaint against the Secretary of Environmental Affairs after it issued a certificate allowing Plymouth to construct a sewage treatment plant. The plaintiffs alleged that construction and operation of the facility would diminish their property values and impair their use and enjoyment of their properties and private septic systems. The plaintiffs in Enos argued that Plymouth’s FEIR was deficient because, among other things, it failed to discuss and analyze the plan’s negative environmental impact as well as project alternatives. Id. at 134.
“A property owner is involved in an actual controversy within the meaning of G.L.c. 231 A, §1 when the use of his property is prevented or impaired by an administrative decision which the owner maintains is invalid.” Villages Development Corp. v. Secretary, 410 Mass. 100, 106 (1989). To have standing under G.L.c. 231A, the plaintiffs interests “must come within the ‘zone of interests’ ” protected by the MEPA. Enos, at 135. It is not sufficient that the plaintiff alleges injury by some act or omission of the defendant; the defendant must additionally have violated some duty owed to the plaintiffs." Id. (citation omitted).
Applying these principles, the Enos Court found that the MEPA’s “area of concern ... is the protection of the environment from damage caused by projects having an environmental impact.” Id. at 138. The Court, however, ultimately held that the plaintiffs had no standing under the Declaratory Judgment Act to challenge the Secretary’s action because the Secretary owed no duty to them. Id. at 141. Instead, the court found that to grant standing based on the plaintiffs “generalized claims of injuiy” concerning the loss of use and enjoyment of properly would open the floodgates to litigation in almost every project, and frustrate the expediency purpose of MEPA review. Moreover, plaintiffs’ injuries, if any, flowed from Plymouth’s ultimate construction of the project and not the Secretary’s certification.
Enos describes the two (2) groups who may have standing to maintain a declaratory judgment action challenging the Secretary’s decision concerning a project’s FEIR: (1) project proponents; and (2) a town facing the construction of the project within its limits. Id. at 140-41. Enos reaffirmed the court’s holding in Villages v. Secretary, 410 Mass. 100 (1991), that the proponents of a planned community development project must have standing to seek declaratory relief to challenge the legality of the Secretary’s MEPA decision. Enos at 140. In Villages, the Secretary asserted jurisdiction over an easement and air rights purchased by the project proponent from the Department of Environmental Management. Villages at 103. Where the proponent had completed 90% of the development, the proponent’s rights were directly affected since it could incur “legally cognizable injury by way of delay and considerable extra expense” if the Secretary was wrong and his decision was not redressed. Id. at 106.
As to the standing of a town, Enos indicates that had it been squarely faced with the standing issue in Walpole v. Secretary, 405 Mass. 67 (1989), the court would have found that a town had standing to seek declaratory relief of the Secretary’s certification of a project that involved the construction of residual facilities on land owned by the town. Enos, supra at 141 (emphasis added). In contrast to the plaintiffs in Enos, who were merely concerned about the use and enjoyment of their properties, the town of Walpole owned the land on which a project was set to be constructed rendering it “a major player in the MEPA administra- • tive process” with considerable rights. Id.
In light of the cases noted above and the general “reluctance to allow plaintiffs to challenge decisions of the Secretary under the MEPA,” Enos, supra at 139,1 conclude that Sherborn has no standing as it is neither a project proponent nor a town that owns the land upon which a project is to be located. In contrast to the plaintiffs in Villages, Holliston, not Sherborn, is considered the proponent of the Comprehensive Waste Management Project. Unlike the plaintiff in Walpole, Sherborn does not own the land upon which the project is to be located. Sherborn and Holliston do share a common boundary defined by water, but the aquifer that may become contaminated by the project located beneath that boundary is a public source of drinking water for Holliston, and thus, is presumably owned by them. Although the aquifer at some point in the future may act as a public drinking water source for Sherborn’s residents, presently it does not. Accordingly, Sherborn does not appear to own any property upon which the project is to be constructed.
Moreover, it is mere speculation that the project may result in contamination of the brooks. This possibility alone does not appear to be enough to grant standing. Instead, Sherborn’s claim that their interests are being “affected or potentially affected” by Holliston’s project simply echoes the allegations of injury resulting from interference with the use and enjoyment of property unsuccessfully raised by the plaintiffs in Enos. Since Sherborn does not squarely fit into either category of plaintiffs considered to have standing in a declaratory action against the Secretary, the Secretary’s motion to dismiss is ALLOWED.

 Specifically, Sherborn alleges that the FEIR (1) failed to comply with 301 C.M.R. 11.07(6)(c) since it did not contain copies of the Secretary’s certificates; (2) failed to comply with 301 C.M.R. 11.07(6)(g) since it did not contain sufficient information concerning the physical, biological, chemical, economic, and social conditions of the project’s site, surroundings or alternatives; (3) failed to comply with 301 C.M.R. 11.07(6)(h) since it did not adequately assess the direct and indirect environmental impact the project would have on surrounding work activity; (4) failed to comply with 301 C.M.R. 11.07(6)( J) since it did not include a discussion of the precautionary measures Holliston would take to mitigate negative environmental affects; and (5) failed to comply with 301 C.M.R. 11.07(6)(k) since it did not include proposed findings in accordance with G.L.c. 30, §61 for each agency.