NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReportersjc.state.ma.us

SJC-11544

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 509  vs.
DEPARTMENT OF MENTAL HEALTH.


Suffolk.     April 7, 2014. - August 15, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.[1]


Privatization Act.  Commissioner of Mental Health.  Auditor.
    Declaratory Relief.  Practice, Civil, Declaratory
    proceeding, Standing, Parties, Failure to join party.


    Civil action commenced in the Superior Court Department on
February 15, 2012.

    The case was heard by Merita A. Hopkins, J., on a motion
for judgment on the pleadings.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Alfred Gordon O'Connell for the plaintiff.
    Jo Ann Shotwell Kaplan, Assistant Attorney General, for the
defendant.
    Donald J. Siegel & James A.W. Shaw, for Massachusetts AFL-
CIO, amicus curiae, submitted a brief.
    Gerald A. McDonough, for the Auditor of the Commonwealth,
amicus curiae, submitted a brief.

---

[1] Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

LENK, J.  The plaintiff, Service Employees International Union, Local 509 (union), appeals from an order of a Superior Court judge dismissing its complaint for declaratory judgment pursuant to G. L. c. 231A, §§ 1, 2, and 5. In that complaint, the union alleged that the Department of Mental Health (DMH) violated the Massachusetts privatization statute, G. L. c. 7, §§ 52-55 (Pacheco Law), by entering into contracts with private entities to obtain services substantially similar to those performed by members of the union, but failing to comply with relevant statutory obligations.  DMH filed an answer as well as a motion for judgment on the pleadings pursuant to Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).  After a hearing, the judge granted DMH's motion, which she treated as a motion to dismiss for lack of subject matter jurisdiction under Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974).  The judge determined that the union lacked both direct and associational standing to seek declaratory relief and, additionally, that the union's failure to join necessary parties constituted a separate jurisdictional bar requiring dismissal.  The judge did not err in declining to consider the union's complaint on the basis of its failure to name all necessary parties.  However, because we conclude that the union has direct standing to seek a declaratory judgment under G. L. c. 231A that would invalidate the contracts at

issue, we remand the case to the Superior Court for the limited purpose of allowing the union to seek leave to amend its complaint by adding all necessary parties.  An order of dismissal shall enter if the union does not take such action within thirty days of the issuance of the rescript in this case.

1.  Background.  The following facts are taken from the union's complaint.  For over a decade, DMH, which provides mental health services to clients throughout the Commonwealth, has employed case managers who are members of the union. Case managers are responsible for conducting initial need assessments, developing individualized service plans, and maintaining ongoing client contact and advocacy.  In late 2008 or early 2009, DMH entered into contracts with private entities to initiate a new program, Community Based Flexible Supports (CBFS).  CBFS services, which were intended to facilitate more personalized client assistance, overlapped in certain respects with services previously provided by DMH case managers.[2]

---

[2] The Department of Mental Health (DMH) has described Community Based Flexible Supports (CBFS) services as including "interventions and supports that manage psychiatric symptoms in the community, restore or maintain daily living skills, promote wellness and the management of medical conditions and assist clients to restore or maintain and use their strengths and skills to undertake employment. . . . CBFS contractors are responsible for:  client screenings and enrollment; assessments and integrated treatment planning; quality and utilization management; data collection and reporting; service documentation and discharge planning."

DMH concluded that the contracts into which it sought to enter did not constitute "privatization contracts" within the meaning of G. L. c. 7, § 53,[3] and that it was therefore not subject to the terms of the Pacheco Law. For this reason, throughout the contracting process, DMH did not comply with any of the requirements enumerated in G. L. c. 7, §§ 52-55, discussed in more detail below, nor did it notify the union or the Auditor of the Commonwealth that it had entered into such contracts. During fiscal year 2009, approximately one hundred case managers, all members of the union, were laid off. The union alleges that these layoffs resulted from implementation of DMH's CBFS contracts because the services provided by private

---

[3] General Laws c. 7, § 53, defines a "privatization contract" as "an agreement or combination or series of agreements by which a non-governmental person or entity agrees with an agency to provide services, valued at $500,000 . . . which are substantially similar to and in lieu of, services theretofore provided, in whole or in part, by regular employees of an agency." The statute further provides that the value of applicable contracts will increase as of January 1 each year in order to reflect the consumer price index. Id. As of January 1, 2014, only contracts valued at $543,442 or more were subject to the requirements of the Pacheco Law, G. L. c. 7, §§ 52-55. See http://www.mass.gov/auditor/information-and-resources/for-public-agencies/the-commonwealths-privatization-law-.html (last viewed Aug. 12, 2014). While the record does not reflect the value of the contracts at issue in the present case, DMH has maintained that the Pacheco Law was inapplicable only because CBFS services, in its view, were distinct from those offered by case managers, not because the contract price was below the established minimum amount.

entities were substantially similar to those previously offered by the case managers.[4]

In early 2009, the union notified the Auditor, who is endowed by G. L. c. 7, § 55, with a "broad grant of power" to review all privatization contracts for compliance with the Pacheco Law, Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 791 (2000) (MBTA), that DMH had declined to follow the terms of the Pacheco Law despite having contracted with private entities in order to implement the CBFS program. On September 15, 2010, after soliciting information from DMH about the contracts at issue, the general counsel for the Auditor issued a memorandum to both parties in which he concluded that the contracts in question constituted privatization contracts under the Pacheco Law and that, accordingly, DMH had erred in declining to comply with the Pacheco Law's requirements.[5] Counsel forwarded this memorandum to the office of the Attorney General "to take whatever

---

[4] In its complaint, Service Employees International Union, Local 509 (union) alleged that case managers lost their jobs as a direct result of DMH's contractual activities. We take no view as to whether the layoffs in fact resulted from the contracts into which DMH entered, or, indeed, whether those contracts constituted "privatization contracts" within the meaning of G. L. c. 7, § 53.

[5] The memorandum states that "the facts in general and the statistics in particular indicate that at least a portion of public services was moved from state employees to private contractors without following the provisions set forth in G. L. c. 7, section 52-57."

steps . . . are appropriate." The Attorney General took no action as a result of the Auditor's findings. Following the issuance of the Auditor's report, DMH has not taken steps to comply with the terms of the Pacheco Law in connection with its implementation of the CBFS program, and has not reinstated the case managers who lost their jobs.

On February 15, 2012, the union filed a complaint in the Superior Court seeking a declaratory judgment pursuant to G. L. c. 231A, §§ 1, 2, and 5. The complaint alleged that DMH had violated the Pacheco Law by entering into contracts with private entities without adhering to the requirements set forth in G. L. c. 7, §§ 52-55, and requested a declaration that the contracts at issue are invalid, as well as equitable relief including monetary damages and reinstatement of the case managers who were laid off. In its answer, DMH averred that there was no violation because the provisions of the Pacheco Law were not applicable to the CBFS contracts.

After a hearing, the judge allowed DMH's motion for judgment on the pleadings, which consisted only of the union's complaint and DMH's answer. She determined that the union lacked both direct and associational standing to pursue its claim, concluding that, where an agency "believes that the law is not applicable in a particular situation," it owes no duty to an employee organization or its members. The judge also

concluded that the Superior Court lacked jurisdiction because the union had failed to join necessary parties to the action pursuant to G. L. c. 231A, § 8, and Mass. R. Civ. P. 19, 365 Mass. 765 (1974). We granted the union's petition for direct appellate review.

2. Discussion. We are asked to determine whether the union has standing to seek declaratory relief where DMH did not comply with the provisions of the Pacheco Law, given its unilateral determination that the law was inapplicable to its proposed contracts with outside vendors. According to the union, DMH breached its statutory duties when it opted not to follow the procedures set forth in the Pacheco Law, thereby preventing the union from protecting the interests and employment rights of its membership. This inability to fulfill its core mission, the union argues, constituted a legally cognizable injury sufficient to confer direct standing for the purposes of G. L. c. 231A.

DMH maintains that the Pacheco Law provides no benefits to the union itself, as distinct from its members, and that the union's rights under the Pacheco Law exist solely to assist State employees. Therefore, DMH contends, it owes no duty to the union under the Pacheco Law, and the union has no standing to seek declaratory relief. In a related vein, DMH argues that the union has suffered no legally cognizable injury that could

serve as a predicate for direct standing. Because, on this view, any statutory obligations DMH might owe the union inure only to the benefit of DMH employees, any injuries occasioned by a violation of those obligations would harm only the union's members and not the union itself. In any event, such injuries would lie outside the Pacheco Law's zone of interest.

As an initial matter and before turning to the merits of this dispute, it seems plain that the Pacheco Law as written does not contemplate the situation presented here. The Pacheco Law establishes "[p]rocedures that agencies must follow when beginning the bidding process for and entering into a privatization contract." MBTA, supra at 786. While G. L. c. 7, § 53, defines which contracts are subject to those enumerated procedures, the Pacheco Law provides no means by which to resolve questions as to whether a particular proposed contract with a private entity constitutes a "privatization contract" within the meaning of G. L. c. 7, § 53. Otherwise put, there is no statutory provision addressing the procedures to follow when an agency makes a unilateral decision that it need not comply with the requirements of the Pacheco Law.

Nor did our previous analysis of the Pacheco Law anticipate such a situation. See MBTA, supra. In that case, a public agency sought to privatize certain services and presented its proposed contract to the Auditor. The Auditor objected,

concluding that the agency had not sufficiently complied with the terms of the Pacheco Law and that its contracts therefore were invalid. Id. at 784-785. The agency sought review pursuant to G. L. c. 249, § 4, based on asserted errors in the Auditor's determination. MBTA, supra at 790. Importantly, neither party disputed the applicability of the Pacheco Law. The agency submitted a draft contract as contemplated by G. L. c. 7, § 54, and the Auditor reviewed that draft in accordance with G. L. c. 7, § 55. MBTA, supra at 784-785. In our review, we asked only whether the Auditor had erred in executing his statutory duties.[6] Id. at 791. Here, on the other hand, we must determine the proper means by which parties may resolve the preliminary question, not expressly contemplated by the Legislature, whether the Pacheco Law applies to certain contracts such that an agency must satisfy its requirements.

With these considerations in mind, we first address whether the union has standing to contest DMH's determination that its proposed contracts fell outside the ambit of the Pacheco Law by

---

[6] Although G. L. c. 7, §§ 52-55, does not explicitly provide for the judicial review of a determination made by the Auditor, in Massachusetts Bay Transp. Auth. v. Auditor of the Commonwealth, 430 Mass. 783, 791 (2000) (MBTA), we considered whether the Auditor "substantially erred in a way that materially affected the rights of the parties." See G. L. c. 249, § 4; Carney v. Springfield, 403 Mass. 604, 605 (1988), citing Murray v. Second Dist. Court of E. Middlesex, 389 Mass. 508, 511 (1983). Here, however, we are not asked to assess the substantive merits of a decision made by the Auditor, and need not further consider the scope of such review.

seeking declaratory relief.  We then turn to the union's alleged failure to join all necessary parties to its complaint.

a.  Standing.  The declaratory judgment statute, G. L. c. 231A, "may be used in the superior court to enjoin and to obtain a declaration of the legality of the administrative practices and procedures of any municipal, county, or state agency . . . ."  G. L. c. 231A, § 2.  A party has standing pursuant to G. L. c. 231A where the defendant has "violated some duty owed to the plaintiff[s]," Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000) (Enos), quoting Penal Insts. Comm'r for Suffolk County v. Commissioner of Correction, 382 Mass. 527, 532 (1981), and where the plaintiffs "can allege an injury within the area of concern of the statute or regulatory scheme."  Enos, supra, quoting Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 293 (1977).[7]  In assessing whether a party may seek declaratory relief, we have considered the text and purpose of the relevant statute and the nature of the administrative scheme it sets forth, the availability of other remedies for the plaintiffs, and any adverse consequences that might follow should standing be recognized.  Enos, supra at 135-136.

---

[7] General Laws c. 231A does not provide an independent basis for standing.  See Enos v. Secretary of Envtl. Affairs, 432 Mass. 132, 135 (2000), citing Pratt v. Boston, 396 Mass. 37, 42-43 (1985).

The notion of standing is an "elastic concept[]" whose meaning depends on the particular parties at issue, id. at 135, and "standing requirements should be liberally construed" in declaratory judgment proceedings, Home Bldrs. Ass'n of Cape Cod, Inc. v. Cape Cod Comm'n, 441 Mass. 724, 733 (2004). We take as true all facts alleged in the union's complaint. See Warth v. Seldin, 422 U.S. 490, 501 (1975) (when considering motion to dismiss for lack of standing, reviewing court must accept as true all material allegations in complaint); Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008); Barbara F. v. Bristol Div. of the Juvenile Court Dept., 432 Mass. 1024, 1025 (2000) (court construed all allegations as true in determining whether plaintiff had standing).

i. Text and purpose of the Pacheco Law and its administrative scheme. General Laws c. 7, §§ 52-55, was enacted in 1993, over the veto of Governor William Weld, based on the Legislature's findings that "using private contractors to provide public services formerly provided by state employees does not always promote the public interest." G. L. c. 7, § 52. See MBTA, supra at 787, quoting Senate Committee on Ways and Means, Fiscal Year 1994 Budget Recommendations 2-21 (June 1993) (noting that "some privatization has indeed come at the citizens' expense"). Accordingly, "[t]o ensure that citizens of the commonwealth receive high quality public services at low

cost, with due regard for the taxpayers of the commonwealth and the needs of public and private workers," the Pacheco Law permits State agencies to enter into privatization contracts only after satisfying certain prerequisites. See MBTA, supra at 785, quoting G. L. c. 7, § 52.

General Laws c. 7, § 54, sets forth the procedures an agency is obliged to follow when it seeks to enter into a "privatization contract" as defined in G. L. c. 7, § 53. The agency must, among other things, (1) prepare a written statement of the services to be performed by private entities; (2) prepare a written estimate of the cost of those services as performed by State employees in the most cost-efficient manner; (3) allow "any relevant employee organization" the opportunity to propose amendments to collective bargaining agreements to lower the estimated cost of State employees performing the services; and (4) consult with any such organization and provide information designed to assist State employees in proposing a bid to keep the services in house. G. L. c. 7, § 54.[8] These requirements

---

[8] General Laws c. 7, § 54, provides, in relevant part:

"No agency shall make any privatization contract and no contract shall be valid unless the agency . . . first complies with each of the following requirements: -- (1) The agency shall prepare a specific written statement of the services proposed to be the subject of the privatization contract, including the specific quantity and standard of quality of the subject services. . . . (4) The agency shall prepare a comprehensive written estimate of

ensure that privatization contracts are permissible only if a State agency can demonstrate cost savings that do not result from lowered employment standards.  "[N]o [privatization] contract shall be valid" unless and until the agency submits a written certification that it has complied with the above requirements and all others enumerated by the statute.  Id.

In order to enforce these requirements, the Auditor may adopt regulations and prescribe forms that an agency must use when formulating its proposal.  G. L. c. 7, § 55 (c).  The Auditor may object to any proposed privatization contract within thirty days of receiving the agency's certificate of compliance. G. L. c. 7, § 55 (a).  Such an objection is final and binding on the agency.  Id.

ii.  Duty and injury.  DMH contends that the provisions of the Pacheco Law serve only State employees and not the unions to which they belong, and that, accordingly, it owes no duty to the

the costs of regular agency employees' providing the subject services in the most cost-efficient manner. . . . For the purpose of this estimate, any employee organization may . . . propose amendments to any relevant collective bargaining agreement to which it is a party. . . . (5) After consulting any relevant employee organization, the agency shall provide adequate resources for the purpose of encouraging and assisting present agency employees to organize and submit a bid to provide the subject services. . . . (7) The head of the agency and the commissioner of administration shall each certify in writing to the state auditor, that:  (i) he has complied with all provisions of this section and of all other applicable laws . . . ."

union.  This argument finds little support in the statutory language.  The Pacheco Law confers two specific, substantive rights on employee organizations that benefit those organizations in and of themselves.  First, G. L. c. 7, § 54 (4), provides that "any employee organization may . . . propose amendments to any relevant collective bargaining agreement to which it is a party" in order to reduce the estimated cost of allowing the services in question to continue to be provided by State employees.  Second, G. L. c. 7, § 54 (5), requires that the agency shall consult with "any relevant employee organization" before providing resources that will encourage agency employees to prepare a bid for the services in question.  No privatization contract "shall be valid" if a public agency fails to comply with these substantive requirements, G. L. c. 7, § 54, which recognize and promote the essential role unions play in "assist[ing their] members to improve their wages, hours, and conditions of employment." G. L. c. 150E, § 1.

Under the plain language of the Pacheco Law, then, a public agency owes certain duties to a collective bargaining organization.  When such an agency seeks to privatize duties previously performed by State employees, it is incumbent upon that agency to allow the union to amend its collective bargaining agreement and benefit from a consultation about

materials relevant to the preparation of a competitive bid.  An agency that does not afford a union these opportunities is not in compliance with the Pacheco Law and cannot be said to have fulfilled its obligations.  Here, accepting all facts alleged in the union's complaint, DMH declined to submit its proposed contracts to the Auditor for review even though the contracts constituted "privatization contracts" within the meaning of G. L. c. 7, § 53.  In thus preventing the union from advocating on behalf of its members in the manner specifically permitted by the Pacheco Law, DMH committed a breach of the duty it owes the union pursuant to that statute.

The union has alleged in its complaint a "reasonably definite" injury stemming from this breach, Professional Fire Fighters of Mass. v. Commonwealth, 72 Mass. App. Ct. 66, 75 (2008), that is neither "speculative, remote, [nor] indirect," Ginther v. Commissioner of Ins., 427 Mass. 319, 323 (1998). Because DMH did not follow the procedural steps set forth in G. L. c. 7, § 54, the union had no opportunity, pursuant to G. L. c. 7, § 54 (4), to amend the terms of its collective bargaining agreements with a public agency in an effort to lower the costs of providing the relevant services by union members. Nor was it able to consult with DMH pursuant to G. L. c. 7, § 54 (5), to assist in compiling information for use by agency employees.  As a result of DMH's unilateral determination that

the Pacheco Law did not apply to its proposed contracts, therefore, the union was precluded from exercising its explicit statutory rights and from intervening, in service of its membership, when confronted with the prospect of privatization.

These consequences are not "inchoate and nonparticularized," Ten Persons of the Commonwealth v. Fellsway Dev. LLC, 460 Mass. 366, 381 (2011) (citation omitted); they bear directly on the union's core mission of protecting the long-term interests of all of its members. See G. L. c. 150E, § 5 ("The exclusive representative . . . shall be responsible for representing the interests of all . . . employees without discrimination"). In essence, the union's complaint alleges that, because of DMH's failure to submit its contracts to the Auditor and to comply with the terms of the Pacheco Law, one hundred case managers lost their jobs; the union could neither exercise its statutory rights to bargain on their behalf nor continue to represent those managers once they were no longer State employees. Taken as true, these deprivations constitute cognizable injury for purposes of the declaratory judgment statute.

What is more, such injuries fall within the zone of interest of the Pacheco Law. See Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., supra at 294 (injury must be "within the parameters of the statutory

concern").  The Pacheco Law was enacted "with due regard

for . . . the needs of public and private workers,"  G. L. c. 7,

§ 52,[9] and, accordingly, allows the union to amend collective

bargaining agreements and consult with a public agency about the

resources necessary to prepare competitive bids.  The

administrative scheme set forth by the Pacheco Law, therefore,

fairly can be seen as promoting the role of employee

organizations in representing the interests of State employees.

When the union was foreclosed from assisting its members in the

ways enumerated by the Legislature, the resulting injury fell

squarely within the statute's area of concern.  See

Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v.

Commissioner of Ins., supra at 295-296.

In contending that it owes no duty to the union and that

the union has suffered no cognizable injury to itself, DMH

misapprehends the nature of employee organizations as defined in

G. L. c. 150E.  A union is the exclusive representative of all

employee members, see G. L. c. 150E, § 4, and it "shall have the

---

[9] Indeed, Governor Weld understood the Pacheco Law, as first proposed by the Legislature, to be a "State Employee Preservation Act."  Governor William F. Weld, Testimony before the Joint Committee on State Administration, in Executive Office for Administration and Finance, Commonwealth of Massachusetts, Privatization in Massachusetts:  Getting Results 49 (Draft Nov. 1, 1993).  See Rosse v. Commissioner of Revenue, 430 Mass. 431, 438 n.6 (1999), quoting Kartell v. Blue Shield of Mass., Inc., 384 Mass. 409, 421 (1981) (This court "may turn to unofficial sources in order to gain a 'contemporary understanding of the underlying purposes' of the legislation").

right to act for and negotiate agreements covering all employees in the unit."  G. L. c. 150E, § 5.  It is not the case, moreover, that the interests of a union are always coextensive with those of its members.  See Anderson v. Commonwealth Employment Relations Bd., 73 Mass. App. Ct. 908, 911 (2009) (union "did act reasonably in negotiating the [collective bargaining agreement] for all its members" even where it did not cater to each individual member's demands).  A union may take action in service of the long-term interests of its members, even where certain employees disagree or are displeased with the immediate result.  See Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953) ("The complete satisfaction of all who are represented [by a union] is hardly to be expected").

The Pacheco Law preserves this distinction between a union and its membership.  For instance, only a union may, pursuant to the Pacheco Law, amend collective bargaining agreements in order to lower the costs of having its members perform the services at issue.  An individual employee has no statutory authority to take such action.[10]  See Miller v. Board of Regents of Higher Educ., 405 Mass. 475, 480 (1989); DiLuzio v. United Elec., Radio

---

[10] This is in keeping with the requirements of G. L. c. 150E, § 6, pursuant to which public employers may negotiate in good faith only with a union.  They are prohibited from dealing directly with individual employee members.  See G. L. c. 150E, § 6; Service Employees Int'l Union, AFL-CIO, Local 509 v. Labor Relations Comm'n, 431 Mass. 710, 714-715 (2000).

& Mach. Workers of Am., Local 274, 386 Mass. 314, 314 (1982), S.C., 391 Mass. 211 (1984) (labor unions are legal entities for purposes of suing or being sued). Furthermore, the Pacheco Law distinguishes between rights that belong to a union and rights that belong to a union's members. As discussed, under the Pacheco Law, the union is empowered to consult with an agency prior to the agency's dissemination of information relevant to competitive bids. Pursuant to G. L. c. 7, § 54 (5), however, the individual members are the parties actually permitted to submit such bids.

These provisions reflect the Legislature's understanding that a union may have rights and interests separate from those of the employees it represents. Although DMH's asserted failure to notify the union of its intent to contract may also have run counter to the interests of the case managers, who were State employees, such conduct caused independent harm to the union itself, which was barred thereby not only from exercising its statutory privileges, but also from engaging in actions indispensable to its essential function. See Massachusetts Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Commissioner of Ins., supra at 296 (plaintiffs had standing where opposite ruling would have had "the potential of lessening the role and vitality of such persons" within administrative scheme).

While the injuries a union suffers also may affect the well-being and rights of its members, rather than being a bar to union standing, such concurrent injury simply reflects the very nature of the relationship between a collective bargaining association and the employees it represents. A union may have standing in its own right even where its members suffer injury, so long as the union, too, is injured in its capacity as an organization. See Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 299 n.11 (1979), overruled on other grounds by 442 U.S. 936 (1979) (union had direct standing to seek declaratory judgment invalidating provision of farm labor statute that inhibited members' constitutional right to freedom of association). Contrast Massachusetts Elec. Co. v. Massachusetts Comm'n Against Discrimination, 375 Mass. 160, 177-178 (1978) (union lacked standing pursuant to G. L. c. 151B, § 1, where "union as a union did not sustain any direct injury as a result of the company's alleged [sex-based] discriminatory practices," which only affected rights of its pregnant members).

iii. Availability of other remedies and possible adverse consequences. To deny standing in these circumstances would leave the union no recourse whenever an agency decides that the requirements of the Pacheco Law are inapplicable and, therefore, that it need not comply with those requirements. See Villages Dev. Co. v. Secretary of the Executive Office of Envtl. Affairs,

410 Mass. 100, 107 (1991) (plaintiff had standing to seek declaratory relief where no other remedy available). Contrast Enos, supra at 141-143 (plaintiffs who had an alternative statutory remedy lacked standing to file claim under G. L. c. 231A). Issuance of a writ of mandamus would be inappropriate against DMH, the Auditor, or the Attorney General, where none of those parties has failed "to perform a clear cut duty" pursuant to the statute.[11] See Montefusco v. Commonwealth, 452 Mass. 1015, 1015 (2008), quoting Simmons v. Clerk-Magistrate of the Boston Div. of the Housing Court Dep't, 448 Mass. 57, 59-60 (2006). Where a State agency seeks to enter into contracts that constitute "privatization contracts" under G. L. c. 7, § 54, that agency, as discussed above, owes certain specific duties to a union pursuant to the Pacheco Law. Here, however, the parties dispute whether the law applies to the proposed contracts in question and thus whether DMH, in fact, owed any duties at all to the union. Indeed, the union sought declaratory judgment in order to resolve precisely this question. Accordingly, absent a

---

[11] Moreover, the extraordinary remedy of mandamus is appropriate only to prevent a failure of justice in instances where no other relief is available and "nothing else would work." Doe v. District Attorney for the Plymouth Dist., 29 Mass. App. Ct. 671, 674 (1991). The Coach & Six Restaurant, Inc. v. Public Works Comm'n, 363 Mass. 643, 644 (1973). See Trust Ins. Co. v. Commissioner of Ins., 48 Mass. App. Ct. 617, 622 (2000) (where petitioner had filed petition for declaratory judgment, mandamus was inappropriate given petitioner's "more general request for relief").

binding declaration that DMH's efforts at privatization did, indeed, fall within the terms of the Pacheco Law, DMH would maintain it has no "clear cut" obligations to the union that might render mandamus an apt mechanism for relief.

It would be equally unsuitable for the union to seek mandamus against the Auditor, who neither shirked his statutory obligation or otherwise violated the terms of the Pacheco Law. As noted, the Legislature did not establish any means by which the Auditor may contest an agency's assertion that the Pacheco Law is inapplicable. Here, the Auditor nevertheless issued a memorandum advising DMH that its proposed contracts were subject to the terms of the Pacheco Law, but subsequently, DMH has taken no steps towards compliance. There is therefore no other action on the part of the Auditor that the union properly could request in a petition for a writ of mandamus. Finally, as for the Attorney General, the Pacheco Law provides only that she may file an action pursuant to G. L. c. 7, § 54 (2), in order to enforce the minimum wage to be paid to those employed under a privatization contract. It makes no express provision for her to intervene when an agency, as here, declines at the outset to submit its contracts to the Auditor.

Nor does the Pacheco Law contain a private right of action that might provide some other avenue for relief. Although DMH points to this absence as evidence that permitting an employee

organization to seek declaratory relief against a public agency would contravene the intention of the Legislature, we draw the opposite conclusion.  A plaintiff may seek the equitable remedy of declaratory relief, Grady v. Commissioner of Correction, 83 Mass. App. Ct. 126, 137 n.9 (2013), even if the relevant statute does not provide a private right of action.  See, e.g., Ten Persons of the Commonwealth v. Fellsway Dev. LLC, 460 Mass. 366, 380 (2011), quoting Enos, supra at 134-135 ("to invoke the court's general equity jurisdiction under c. 231A, '[t]he dispositive question is whether the plaintiffs have demonstrated that they have standing to maintain their action . . .'").  Cf. Sullivan v. Chief Justice for Admin. & Mgt. of the Trial Court, 448 Mass. 15, 24, 38 (2006) (plaintiff employees could seek declaratory relief against trial court for exposure to asbestos despite absence of private right of action in applicable environmental statutes).

To be sure, a party may not seek declaratory relief to effect an "end run" around the absence of a private right of action where the Legislature intended to foreclose certain remedies.  See Boston Med. Ctr. Corp. v. Secretary of the Executive Office of Health & Human Servs., 463 Mass. 447, 471 (2012), citing Green v. Mansour, 474 U.S. 64, 73 (1985) (plaintiff medical provider could not seek declaratory judgment as to reasonableness of rate determinations absent private right

of action).  But that rationale has little weight where the absence of declaratory relief would prevent the Pacheco Law from being administered properly and thus contravene the Legislature's intent.  Here, the union suffered a cognizable injury but cannot directly enforce the terms of the statute or otherwise vindicate its rights.  No other party is entitled to challenge the alleged violation.  In such specific circumstances, declaratory judgment is an appropriate vehicle for relief to ensure that agencies may not evade the requirements of the Pacheco Law with impunity.

In short, it cannot be that there is no recourse where an agency, believing the Pacheco Law is inapplicable in a particular situation, simply opts not to comply with its terms. The Pacheco Law could not function as the Legislature intended if an agency could decide, unilaterally and without input from the Auditor or the union, that its proposed contracts did not fall within the provisions of  G. L. c. 7, § 53.  Indeed, a public agency would have little incentive to adhere to the Pacheco Law's requirements were its decision to evade those requirements immune from any review.  DMH's belief that the Pacheco Law does not apply to its proposed contracts cannot be understood to inoculate it against efforts to demonstrate otherwise.  Such an approach would render the statute toothless,

confounding the Legislature's efforts to ensure that privatization does not occur at the expense of public welfare.

Allowing the union to contest an agency's otherwise unreviewable pronouncement that it need not comply with the Pacheco Law will not, as DMH contends, transform the declaratory judgment statute into a "roving entitlement for allegedly aggrieved plaintiffs." Enos, supra at 141 (no standing where public agency did not owe plaintiff property owners duty under Massachusetts Environmental Protection Act). To confer standing on an employee organization in this circumstance does no more than allow it to challenge the view of a public agency that its proposed contracts do not fall within the terms of the Pacheco Law.[12] Indeed, such challenges are critical to the functioning

---

[12] Our decision that declaratory judgment is an appropriate remedy here should be understood as limited to the circumstances presented, where an agency takes the position that the Pacheco Law does not apply to certain contracts with private entities and accordingly does not comply with relevant statutory obligations including notification of the Auditor as to such contracts. See G. L. c. 7, §§ 52-55. In contrast, an action in the nature of certiorari pursuant to G. L. c. 249, § 4, is the proper vehicle for relief when challenging a decision made by the Auditor. See MBTA, supra at 790-791.

Further, the Pacheco Law, consistent with its purpose, provides a streamlined and time-sensitive process for agencies seeking to enter into privatization contracts. Such contracts affect the interests of many parties and the concomitant need for expedition in settling questions as to their validity is evident. Given this, and notwithstanding the three-year statute of limitations for declaratory judgment actions, a union failing to take prompt action against the agency in these circumstances

of the statute, and also may provide clarity to parties in related situations concerning whether they properly are subject to the requirements of the Law.

We express no opinion as to the merits of the Auditor's determination that the CBFS contracts at issue constitute "privatization contracts" such that the Pacheco Law does, in fact, apply. See note 4, supra. Contrast MBTA, supra at 791-792. We conclude only that there must be a way to resolve any disputes over the parameters of the Pacheco Law in the first instance, and that the union's complaint alleged a cognizable injury sufficient to support standing. Because the union is the party best situated to challenge an agency's decision not to submit proposed contracts to the Auditor, because seeking a declaratory judgment is the only viable mechanism by which it may do so, and because the Legislature could not have intended that the Pacheco Law effectively be unenforceable, the union has direct standing to pursue declaratory relief under G. L. c. 231A.[13]

_____

runs the serious risk of exposure to the affirmative defense of laches.

[13] The union also alleges that it has associational standing, on behalf of its members, to file a petition for declaratory relief. Given our conclusion that direct standing does lie, we do not reach this claim.

b.   Joinder of necessary parties.   We turn to the union's
asserted failure to join necessary parties pursuant to G. L.
c. 231A, § 8, and Mass. R. Civ. P. 19, which, DMH maintains,
independently should bar consideration of the union's complaint.
The declaratory judgment statute provides that "all persons
shall be made parties who have or claim any interest which would
be affected by the declaration."  G. L. c. 231A, § 8.  Rule 19,
although not limited to the context of declaratory relief, is to
similar effect.[14]   The failure to name necessary parties may be
jurisdictional in a declaratory judgment action, thereby
precluding the court's consideration of the issue.  See, e.g.,
Villages Dev. Co. v. Secretary of the Executive Office of Envtl.
Affairs, 410 Mass. 100, 105-106 (1991).

In its complaint, the union did not name as defendants the
private vendors with whom DMH entered into contracts under the
CBFS program.  These vendors, however, are plainly necessary
parties.  As beneficiaries of the disputed contracts, the

---

[14] Rule 19 (a) of the Massachusetts Rules of Civil
Procedure, 365 Mass. 765 (1974), provides that a

"person who is subject to service of process shall be
joined in the action if . . . (2) he claims an interest
relating to the subject of the action and is so situated
that the disposition of the action in his absence may (i)
as a practical matter impair or impede his ability to
protect that interest or (ii) leave any of the persons
already parties subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent obligations by
reason of his claimed interest."

vendors have an interest in the resolution of the union's claim, and, like DMH, a right to contest whether the contracts are subject to the terms of the Pacheco Law.  Unless and until the vendors are joined as parties, therefore, "any declaration of rights would be merely academic as to persons not parties to the proceedings."  J.R. Nolan & B.R. Henry, Civil Practice § 48.11, at 411 (3d ed. 2004) ("fundamental purpose" of declaratory judgment "cannot be effectuated" where necessary parties are missing from suit).  Accordingly, the judge did not err in concluding that the union's failure to name all necessary parties rendered its complaint legally insufficient, and that she therefore lacked jurisdiction to entertain that complaint.

3.  <u>Conclusion</u>.  While there was no error in the judge's decision to dismiss the complaint on the ground of the failure to name all necessary parties, in light of our conclusion as to direct standing, the judgment of dismissal is vacated and set aside, and the case is remanded to the Superior Court for the limited purpose of allowing the union to file a motion seeking leave to amend the complaint to add all necessary parties.  If the union does not file such a motion within thirty days of the issuance of the rescript in this case, an order shall enter dismissing the complaint.

<u>So ordered</u>.