Sanders, Janet L., J.
Plaintiff Service Employees International Union, Local 509 (SEIU) brings this declaratory judgment action claiming that the Department of Mental Health (DMH) violated the Pacheco Law, G.L.c. 7, §§52-55, when it entered into contracts with nineteen privately run mental health service provider organizations (the Nineteen Providers) without first complying with the statute’s requirements. The defendants, which include DMH, the Nineteen Providers,[1] and the DMH Commissioner, now move for judgment on the pleadings, contending among other things that the lawsuit is now moot because the contracts have expired. For the following reasons, this Court agrees and concludes that the defendants’ Motion must be Allowed.
BACKGROUND
The following comes from the allegations, taken as true, in SEIU’s Amended Complaint; public records appropriate for judicial notice; and those documents SEIU relied upon in framing its complaint. See Welch v. Sudbury Youth Soccer Ass’n, Inc., 453 Mass. 352, 354 (2009); Jorosz v. Palmer, 436 Mass. 526, 530 (2002); Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 224 (2011); Reliance Ins. Co. v. City of Boston, 71 Mass.App.Ct. 550, 555 (2008).
In 1993, the Legislature enacted the Pacheco Law “[t]o ensure that citizens of the commonwealth receive high quality public services at low cost, with due regard for the taxpayers of the commonwealth and the needs of public and private workers.” G.L.c. 7, §52. The statute does not prevent privatization of public services but does set forth a process which must be followed and requirements which must be met by any agency entering into a “privatization contract.” These procedures include solicitation of competitive sealed bids and certification to the state auditor (the Auditor) that the contract cost will be less than the estimated expense of such services if provided by regular agency employees. G.L.c. 7, §54. A privatization contract that does not comply with the statute’s requirements is otherwise not valid. G.L.c. 7, §54.
As to which contracts are privatization contracts and thus subject to the statute’s requirements, that is set forth in G.L.c. 7, §53 (Section 53), which defines a “privatization contract" to be:
an agreement or combination or series of agreements by which a nongovernmental person or entily agrees with an agency to provide services, valued at $500,000 [subject to annual increase], which are substantially similar to and in lieu of, services theretofore provided, in whole or in part, by regular employees of an agency.
(Italics added.) Expressly excluded from this definition is any “subsequent agreement, including any agreement resulting from a rebidding of previously privatized service, or any agreement renewing or extending a privatization contract. . .” Id. (italics added). The statute does not prohibit an agency from making its own determination that a contract does not fall within the definition of G.L.c. 7, §53. It does set forth a procedure, however, by which the Auditor may lodge a written objection with the agency informing it that it has not complied with the statute. Such a written objection shall be final and binding on the agency." G.L. c. 7, §55. “An agency shall not make any privatization contract and no such contract shall be valid” if such an objection is made and not withdrawn. Id.
In late 2008 or early 2009, DMH entered into contracts with the Nineteen Providers as part of a new program, known as Community Based Flexible Supports (CBFS), intended to facilitate more personalized client assistance. The contracts were for a five-year term, with an option for one-year renewals over the following three years. Although CBFS services overlapped with services provided by DMH case managers, DMH was of the view that the services were not “substantially similar” and thus were not “privatization contracts” subject to the Pacheco Law’s requirements. SEIU alleges that they were.[2] During fiscal year 2009, DMH laid off approximately one hundred case managers represented by SEIU—all layoffs resulting from the implementation of the CBFS contracts.
In early 2009, SEIU informed the Auditor of its position that the CBFS contracts were privatization contracts within the meaning of the statute and thus were not valid because DMH had not complied with the Pacheco Law. The Auditor reviewed the matter and (noting that the “issues are not easy to pinpoint and analyze due to the nature of the services”) ultimately issued a memorandum in September 2010 concluding that “at least a portion of public services was moved from state employees to private contractors without following the provisions set forth in M.G.L.c. 7, sections 52-57.” General Counsel Memorandum at 5 (attached to Complaint). The general counsel forwarded this memorandum to the Office of the Attorney General, which took no action. DMH made no attempt *53 to comply with the Pacheco Law in connection with its implementation of the CBFS program.
In February 2012, approximately seventeen months after the Auditor’s determination, SEIU filed a single-count complaint seeking a declaratory judgment that DMH had violated the Pacheco Law and that the portions of the CBFS contracts which related to services substantially similar to those performed by the case managers were invalid. It also requested equitable relief including reinstatement of the laid-off case managers and back pay for those case managers. In March 2013, this Court (Hopkins, J.) granted DMH’s motion for judgment on the pleadings, concluding that SEIU did not have direct or associational standing to pursue its declaratory judgment claim and that it had failed to add necessary parties, i.e., the Nineteen Providers. SEIU appealed. The SJC held that, while SEIU had failed to add necessary parties, the union had direct standing to bring its claim. See Service Emp. Int’l Union, Local 509 v. Department of Mental Health, 469 Mass. 323 (2014). It vacated and set aside the judgment of dismissal, remanding the case to permit SEIU to amend its complaint to add necessary parties.
SEIU amended the complaint in October 2014 to include the Nineteen Providers. In the meantime, the original CBFS contracts had expired. DMH and the Nineteen Providers have entered into one-year renewal agreements since then, the most recent commencing in June 2015.
DISCUSSION
A petition for declaratory relief must be based on a live, actual controversy. See G.L.c. 231A, §1; Quincy City Hosp. v. Rate Setting Comm’n, 406 Mass. 431, 439 (2009) (“Declaratory judgment is a vehicle for resolving actual, not hypothetical, controversies, with the declaration issued intending to have an immediate impact on the rights of the parties”); see also Massachusetts Ass’n of Indep. Agents and Brokers, Inc. v. Commissioner of Ins., 373 Mass. 290, 292 (1977). Here, the CBFS contracts that are the subject of the Amended Complaint expired in June 2014. Any declaration regarding their past validity is moot—or, as the DMH puts it, this Court has no subject matter jurisdiction because there is no live controversy on which declaratory relief may be based.
As its principal argument in opposition, SEIU asserts that, even though the original CBFS contracts have expired, they were renewed and these renewal contracts are subject to judicial review such that declaratory judgment would have an immediate impact on the rights of the parties. That would be true, however, only if the renewal agreements contracts are subject to the provisions of the Pacheco Law, since their alleged noncompliance is the only basis for this lawsuit. This Court concludes that they are not, based on the plain language of Section 53, which expressly excludes “any agreement renewing or extending a privatization contract.” Thus, even assuming that the original contracts were privatization contracts so as to be subject to the Pacheco Law’s requirements, agreements renewing those contracts, even on the same terms, are not.
SEIU contends however, that in order to fit under this exclusion, the contracts now in effect must be renewals of an original contract which was itself valid. This is not supported by Section 53, which attaches no conditions to the exclusion of renewal agreements from the statute’s reach. Indeed, the Legislature could have easily written in such a condition, but chose not to do so and the Court cannot add such language on its own. Prudential Ins. Co. v. Boston, 369 Mass. 542, 547 (1976) (“It is the function of the court to construe a statute as written and an event or contingency for which no provision is made does not justify judicial legislation”). Nor does this Court find a basis for implying such a condition by the language in Section 53 stating that the exclusion applies to extensions or renewals of “privatization contracts.” Whether the CBFS contracts could have been determined to be invalid (and thus were voidable), the fact remains that the only agreements currently in existence are the renewal agreements and they are specifically excluded from the statute’s requirements.
The SEIU argues more generally that the Pacheco Law has a remedial purpose to it which will somehow be undermined by adopting too narrow a construction of its terms. That is, to interpret Section 53 in the manner proposed by the defendants (it is argued) would not only foreclose judicial examination of the original contracts but would also permit DMH to avoid any “repercussions” resulting from its own refusal to act in accordance with the Auditor’s decision. Plaintiffs’ Opposition to Defendant Department of Mental Health’s Motion for Judgment on the Pleadings at p. 5. As defendants point out, however, “the legislative judgment to confine potential legal exposure to initial privatization contracts and not to extend such exposure indefinitely to follow on contracts involving the same services is clearly rational and even desirable.” Memorandum in Support of Defendant Eighteen Providers’ Suggestion of Mootness and Motion for Judgment on the Pleadings at p. 15. That is particularly true given the significant reliance interests at stake, which include the interest not only of the private service providers but also that of the citizens who depend on them for the provision of mental health services. Cf. SEIU v. DMH, 469 Mass. at 337, n.12.
As its fallback position, SEIU argues that its claim is not moot because it can still receive equitable relief, including a return to the status quo ante and reinstatement, based on a declaration that DMH violated the Pacheco Law in connection with the original CBFS contracts.[3] Such relief, it maintains, may be provided pursuant to the Court’s inherent equitable powers and G.L.c. 231, §5, which provides that “[f]urther relief *54 based on a declaratory judgment or decree may be granted whenever necessary or proper.” But the statute contains no private right of action and does not provide for the reinstatement of former agency employees, suggesting that such an equitable remedy would go beyond the scope of the statute. See Rossi Bros. v. Commissioner of Banks, 283 Mass. 114, 119 (1933) (“equity follows the law as declared by a statute”).[4] Indeed, reinstatement or similar remedy would be entirely unworkable: individuals are now working in the positions to which the terminated case managers would seek to be reinstated, and they are doing so pursuant to renewal agreements which this Court has already determined to be valid.
CONCLUSION AND ORDER
For the foregoing reasons and for other reasons articulated in the defendants’ memoranda, the Defendants’ Motions for Judgment on the Pleadings are ALLOWED and it is hereby ORDERED that judgment enter DISMISSING the Amended Complaint, with prejudice.

 By name, the Nineteen Providers are Advocates, Inc., Bay Cove Human Services, Inc., Brien Center For Mental Health and Substance Abuse Services, BrocktonArea Multi Services, Inc., Carson Center for Human Services, Inc., Center for Human Development, Inc., Community Counseling of Bristol County, Inc., Mental Health Association of Greater Lowell, Inc., North Suffolk Mental Health Association, Riverside Community Care, Inc., Servicenet, Inc., South Shore Mental Health Center, Inc., The Bridge of Central Mass., Inc., The Edinburg Center, Inc., Vinfen Corporation, Inc., and Alternatives, Inc. Alternatives, Inc. is separately represented.

 Although DMH separately argues that the services are not substantially similar, this Court assumes SEIU’s allegation that they are to be true for purposes of this motion.

 Although the SEIU in its complaint also sought back pay on behalf of its members, it appears to have abandoned this request, and with good reason. The SEIU most likely has no associahonal standing to seek such relief, since that would require individualized proof from the terminated case managers. See Modified Motorcycle Ass’n of Mass., Inc. v. Commonwealth, 60 Mass.App.Ct. 83, 85 n.6 (2003), quoting Hunt v. Washington State Apple Advertising Comm’n, 432 U.S. 333, 343 (1977) (associahonal standing exists only if, among other things, “neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit”).

 Judge Hopkins determined precisely that in her Memorandum of Decision and Order on Defendants’ original Mohon for judgment on the pleadings. Although the dismissal was ulhmately vacated, the SJC left undisturbed this particular ruling.