NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-210                                          Appeals Court

STATE POLICE ASSOCIATION OF MASSACHUSETTS & others[1] vs.  TIMOTHY
ALBEN[2] & another.[3]


No. 19-P-210.

Suffolk.     November 1, 2019.  -  May 1, 2020.

Present:  Agnes, Sullivan, & Blake, JJ.


State Police.  Practice, Civil, Declaratory proceeding,
     Standing.  Declaratory Relief.  Arbitration, Collective
     bargaining, Police.  Police, Collective bargaining.  Public
     Employment, Collective bargaining, Police.  Labor, Public
     employment, Collective bargaining, Failure to pay wages,
     Overtime compensation.


     Civil action commenced in the Superior Court Department on
June 19, 2015.

     A motion to reinstate the complaint, filed on June 28,
2018, and motions to dismiss and for summary judgment were heard
by Douglas H. Wilkins, J., and entry of final judgment was
ordered by him.


_____

     [1] Timothy Gillespie, Justin Joyce, and Daniel Sullivan.

     [2] Individually and in his official capacity as
Superintendent of the Massachusetts State Police.

     [3] Thomas P. Glynn, individually and in his official capacity
as chief executive officer of the Massachusetts Port Authority.

Stephen G. DeNigris for the plaintiffs.
Howard R. Meshnick, Assistant Attorney General, for Timothy
Alben.
Joseph M. Kaigler, Sr., for Thomas P. Glynn.

SULLIVAN, J.  The plaintiffs, the State Police Association

of Massachusetts (union) and several individual State troopers,

appeal from a judgment entered in the Superior Court dismissing

their claims for overtime pay against two Massachusetts State

Police (State Police) and Massachusetts Port Authority

(MassPort) officials.[4]  The plaintiffs' claims for damages and

declaratory relief were dismissed after an arbitrator ruled that

the collective bargaining agreement (CBA) between the State

Police and the union provided for payment for detail work at a

lower rate than the CBA required for overtime work.  At issue is

whether the State troopers were entitled to overtime pursuant to

G. L. c. 149, § 30C, which mandates time and one-half pay for

overtime work by State troopers, or whether they were

permissibly paid the detail rate set forth in the CBA.  We

conclude that G. L. c. 150E, § 7 (d) (i), requires that the

contractual pay rate for detail work takes precedence, and we

affirm.

---

[4] The complaint named the defendants in both their official
and individual capacities.  Because all of the allegations in
the complaint concern only actions taken by the defendants in
their official capacities, we refer throughout to Alben as
"State Police," and to Glynn as "MassPort."

Background.  At all relevant times, MassPort contracted with the State Police for police services at Logan International Airport (airport).  See G. L. c. 22C, § 30 ("The colonel shall enter into an agreement with [MassPort] for police service to be provided by the department at . . . [the] airport").  State Police Troop F provided State troopers who worked at the airport.

The State troopers in Troop F were represented by the union for purposes of collective bargaining with the State Police. The union and the State Police are parties to the CBA that included, in relevant part, an article on overtime,[5] an article on detail work,[6] and a grievance process culminating in arbitration.  Pursuant to an agreement between the State Police and MassPort, Troop F State troopers were paid directly by MassPort for overtime work at the time the complaint was filed. MassPort and the State Police subsequently amended their

---

[5] Article 8, § 2(D), of the CBA stated that, "[i]f duty requires an employee to work beyond the normal quitting time of his/her scheduled tour of duty, he/she shall be deemed to have performed overtime service for each hour or fraction thereof." The CBA obliged the employer to pay such overtime "at the rate of time and one-half [a trooper's] regular hourly pay."

[6] Article 30 of the CBA addressed "paid details" and referenced a "circular letter" that the parties to the CBA were authorized to amend by agreement.  At the time the complaint was filed, the parties' most recent memorandum of agreement on paid details required the State Police to "increase the detail rate from $40.00 per hour to $44.00 per hour effective February 1, 2014."

agreement in June, 2018, to return Troop F to the State Police payroll, and to have MassPort reimburse the State Police for the costs of State Police services at the airport.

The plaintiffs filed a complaint with the Attorney General's office alleging that the State Police and MassPort were in violation of various Massachusetts wage and hour laws because the State Police had paid the individual plaintiffs at the lower "detail pay" rate provided in the CBA, rather than the time and one-half overtime rate provided in G. L. c. 149, § 30C. On May 6, 2015, the Attorney General's fair labor division issued letters to the individual plaintiffs "authorizing [them] to pursue this matter through a civil lawsuit immediately."

Thereafter the plaintiffs filed the present complaint. The plaintiffs alleged that the defendants had violated G. L. c. 149, § 30C, by failing to pay State troopers time and one-half their normal hourly rate for "overtime detail work."[7] The

---

[7] General Laws c. 149, § 30C, provides, in relevant part:

"The service of all . . . uniformed members of the state police . . . shall consist of an average of forty hours per week over a period of one or more work weeks not in excess of eight, as determined by the commissioner of the department in which they are . . . serving, and shall be restricted to not more than five normal work days, as so determined, in any consecutive seven-day period; provided, however, that all services in excess of the normal work day, as so determined, or in excess of forty hours per week, as so averaged, rendered by any such officer at the request of the commissioner of the department in which he is serving, shall be compensated for at the rate of one and

complaint sought declaratory relief and damages. Both defendants promptly moved to dismiss. The Superior Court judge granted the motions to dismiss without prejudice as to the counts against the State Police and the count for damages against MassPort, ruling that the parties should submit the grievance to arbitration under the CBA, and that the arbitrator should rule in the first instance.[8] The judge stayed the portion of the complaint that sought declaratory relief against MassPort.

The plaintiffs filed for arbitration. The arbitrator ruled that the grievance was not substantively arbitrable. He concluded that the State Police Colonel had the nondelegable authority to assign State troopers to detail work as opposed to overtime work.[9] He also concluded that the negotiated rate for detail work was binding, and that he lacked the authority to change it, "because [t]he parties' [CBA] and past practice clearly provides for different rates of pay for private details and overtime work." The arbitrator declined to reach the issue whether the CBA violated State wage and hour laws, concluding

---

one half times the regular hourly rate of such officer for every hour or fraction thereof of such services rendered."

[8] The parties have not challenged this aspect of the judge's ruling, and we express no opinion on it.

[9] The plaintiffs do not challenge this aspect of the arbitration award.

that whether the parties' "contract terms and past practice violate Massachusetts [l]aw is a matter that is not within the scope of the parties' [CBA], and must be adjudicated in the judicial forum."

The plaintiffs then moved to reinstate the complaint. The Superior Court judge allowed that motion and also allowed the State Police's motion to dismiss and MassPort's motion for summary judgment. The judge concluded that under G. L. c. 150E, § 7 (d) (i), the CBA superseded any contrary provision in G. L. c. 149, § 30C.

Discussion. "We review the allowance of a motion to dismiss de novo." Massachusetts State Police Commissioned Officers Ass'n v. Commonwealth, 462 Mass. 219, 221 (2012), quoting Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011). "We accept as true the allegations in the complaint and draw every reasonable inference in favor of the plaintiff." Id., quoting Curtis, supra. Similarly, "our review of a motion for summary judgment is de novo." Murray v. Hudson, 472 Mass. 376, 384 (2015), citing Roman v. Trustees of Tufts College, 461 Mass. 707, 711 (2012). For purposes of summary judgment, we accept as undisputed the arbitrator's factual findings, and treat his interpretation of the contract as final and binding. See Pittsfield v. Local 447 Int'l Bhd. of Police Officers, 480

Mass. 634, 637-638 (2018).[10]  Any remaining material facts

presented are undisputed, and the appeal presents a question of

law.

1.  Private right of action.  The State Police and MassPort

contend that there is no private right of action to challenge

violations of G. L. c. 149, § 30C, because the Attorney General

alone is authorized to enforce that section.  The plaintiffs

maintain that a private right of action may be inferred and

that, in any case, the Attorney General conferred a right of

action on the plaintiffs by issuing "right to sue" letters.

General Laws c. 149, § 2, provides that "[t]he attorney

general shall, except as otherwise specifically provided,

enforce the provisions of this chapter, and shall have all

necessary powers therefor."  In analogous circumstances we have

held that no private right of action exists under G. L. c. 149,

§ 30B, which addresses overtime pay for Commonwealth employees

who are not State troopers.  Tortolano v. Lemuel Shattuck Hosp.,

93 Mass. App. Ct. 773, 779 (2018).  In Tortolano, supra, we

noted that § 30B made no reference to a private right of action,

---

[10] "Because of a strong public policy favoring arbitration, judicial review of an arbitrator's award is limited in scope. We may not pass on an arbitrator's alleged errors of law or fact."  Board of Higher Educ. v. Massachusetts Teachers Ass'n, NEA, 62 Mass. App. Ct. 42, 47 (2004), citing Higher Educ. Coordinating Council/Roxbury Community College v. Massachusetts Teachers' Ass'n/Mass. Community College Council, 423 Mass. 23, 27 (1996).

unlike, for example, G. L. c. 149, § 150.  We reasoned "the many express private rights of action in c. 149 demonstrate that the Legislature knows how to confer a private right of action when it so intends, and the c. 149 provisions are a strong indication that no further private rights of action should be inferred." Tortolano, supra.  For the same reasons, we conclude that there is no express or implied private right of action in G. L. c. 149, § 30C.  See Tortolano, supra at 778-781.  The Attorney General may not confer by letter a private right of action that the Legislature has not authorized.  See id. at 780.

The plaintiffs contend that they nevertheless have standing to bring a declaratory action pursuant to G. L. c. 231A, because "[a] plaintiff may seek the equitable remedy of declaratory relief . . . even if the relevant statute does not provide a private right of action."  Service Employees Int'l Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 335 (2014). The issue of standing to bring a declaratory judgment action is a complex question.  A party may not perform an "end run" around a legislative determination to foreclose certain remedies by seeking declaratory relief.  Id. at 336.  Further complexities may arise where a party asserts associational standing.  See generally id. at 333-337.  However, even were we to assume, without deciding, that one or more plaintiffs had standing to

bring a declaratory judgment action under G. L. c. 149, § 30C, their claims would not succeed.

2. Rate of pay. The plaintiffs contend that G. L. c. 149, § 30C, requires payment at the overtime rate of time and one-half, notwithstanding the arbitrator's ruling that the CBA provided for voluntary details to be paid at the lower detail rate.

The Commonwealth has a "strong public policy favoring collective bargaining between public employers and employees over the conditions and terms of employment." Board of Higher Educ. v. Commonwealth Employment Relations Bd., 483 Mass. 310, 319 (2019), quoting Somerville v. Somerville Mun. Employees Ass'n, 451 Mass. 493, 496 (2008). The Commonwealth also has a strong interest in enforcing its own statutes. These public policies are embedded in G. L. c. 150E, § 7 (d), which explicitly delineates the dividing line between the Commonwealth's interest in collective bargaining and its interest in setting certain conditions of employment by statute. See Chief Justice for Admin. & Mgt. of the Trial Court v. Office & Professional Employees Int'l Union, Local 6, 441 Mass. 620, 625 n.13 (2004). "General Laws c. 150E, § 7 (d), provides that, with respect to matters within the scope of negotiations under G. L. c. 150E, § 6, the terms of a collective bargaining agreement prevail over contrary terms in certain enumerated

statutes."  Somerville v. Commonwealth Employment Relations Bd.,
470 Mass. 563, 572 (2015).

Among those enumerated statutes is G. L. c. 149, § 30C.
See G. L. c. 150E, § 7 (d) (i) ("the terms of the collective
bargaining agreement shall prevail" over "sections thirty to
forty-two, inclusive, of chapter one hundred and forty-nine").
The language of G. L. c. 150E, § 7 (d) (i), is clear and
unambiguous.  See Worcester v. College Hill Props., LLC, 465
Mass. 134, 138-139 (2013).  Consequently, under G. L. c. 150E,
§ 7 (d) (i), the CBA governs, not G. L. c. 149, § 30C.  As a
matter of interpretation of the CBA, the arbitrator's
determination that the detail rate of pay applied is conclusive;
the CBA as interpreted prevails over any arguably conflicting
provision of G. L. c. 149, § 30C, regarding the rate of overtime
pay.[11]  The State Police did not violate G. L. c. 149, § 30C, by
paying the detail rate in accordance with the CBA, rather than
at the time and one-half rate provided in the statute.[12]

---

[11] Because we conclude that G. L. c. 150E, § 7 (d), provides
that the terms of the CBA prevail over G. L. c. 149, § 30C, we
find it unnecessary to decide whether the paid details at issue
would be paid as overtime at a time and one-half rate under that
statute in the absence of the CBA.

[12] By extension, MassPort did not violate G. L. c. 149,
§ 30C, regardless of whether it is considered a joint employer
of the State troopers who worked at the airport.  Consequently,
we decline to reach the issue whether MassPort was a joint
employer prior to June 1, 2018, when the State Police and

The plaintiffs nevertheless contend that the real issue is whether G. L. c. 150E, § 7 (d), applies in perpetuity, or whether the durational limit for CBAs in G. L. c. 150E, § 7 (a), also limits the time that a CBA will prevail over a conflicting statute under § 7 (d).  The plaintiffs "did not raise this argument [below] and have therefore waived it on appeal." Charles v. Leo, 96 Mass. App. Ct. 326, 336 (2019).  However, "[i]f we were to reach the merits, we would disagree."  Id.  See Quazi v. Barnstable County, 70 Mass. App. Ct. 780, 783 n.2 (2007).

The plaintiffs rely on Boston Hous. Auth. v. National Conference of Firemen & Oilers, Local 3, 458 Mass. 155, 162 (2010), for the proposition that "[t]he unambiguous language of G. L. c. 150E, § 7 (a), reveals a clear legislative intent to limit the term of a CBA to not more than three years."  The plaintiffs contend that the three year limit of § 7 (a) governs not only the duration of a CBA, but also the length of time that the CBA may prevail over an inconsistent statute enumerated in § 7 (d).

---

MassPort amended their agreement to require that the State Police pay State troopers assigned to Troop F directly.

This argument misses the mark.[13]  General Laws c. 150E, § 7 (a), has been amended in such a manner as to negate the conclusion reached in the Boston Hous. Auth. case.  There the Supreme Judicial Court addressed whether an "evergreen clause" -- that is, language in a CBA that continued the terms and conditions of a CBA after its expiration -- was valid under a prior version of G. L. c. 150E, § 7 (a).  Boston Hous. Auth., 458 Mass. at 162.  At that time the statute read, in pertinent part, "[a]ny collective bargaining agreement reached between the employer and the exclusive representative shall not exceed a term of three years."  Id., quoting G. L. c. 150E, § 7 (a), as then in effect.  The Supreme Judicial Court concluded that evergreen clauses were invalid under the statutory language then in effect, because public employers and unions were limited by the plain meaning of the three-year durational limit of § 7 (a).  However, the Legislature abrogated the central holding of Boston Hous. Auth. the following year, when it amended G. L. c. 150E, § 7 (a), to expressly permit public employers and unions to negotiate enforceable evergreen clauses.  See G. L. c. 150E,

---

[13] Carried to its logical conclusion, the plaintiffs' argument would prohibit parties to a CBA from negotiating successive CBAs carrying forward terms and conditions of employment that implicate any statue enumerated in G. L. c. 150E, § 7 (d).  This result would be at odds with the plain language of § 7 (d).

§ 7 (a), as amended by St. 2011, c. 198, § 1.[14]  The CBA at issue here contains such an evergreen clause, but more importantly, detail and overtime pay provisions in the CBA have remained in effect in successive CBAs at all points material to this litigation.  Consequently, we reject the plaintiffs' contention that G. L. c. 150E, § 7 (a), limits to three years the duration that the CBA will prevail over G. L. c. 149, § 30C.

Conclusion.  We conclude that the detail rate of pay in the CBA prevails over any contrary provisions in G. L. c. 149, § 30C.  See G. L. c. 150E, § 7 (d) (i).  Payment at the detail rate negotiated by the parties in the CBA therefore does not violate the overtime provisions of G. L. c. 149, § 30C.  Accordingly, the judge did not err in allowing the State Police's motion to dismiss and MassPort's motion for summary judgment.

Judgment affirmed.

---

[14] General Laws c. 150E, § 7 (a), as amended by St. 2011, c. 198, § 1, now reads, in pertinent part:

"Any collective bargaining agreement reached between the employer and the exclusive representative shall not exceed a term of three years; provided, however, that the employer and the exclusive representative through negotiation may agree to include a provision in a collective bargaining agreement stating that the agreement's terms shall remain in full force and effect beyond the [three] years until a successor agreement is voluntarily negotiated by the parties."